Marshall, C. J.
 

 It should first be stated that we have carefully examined and analyzed the record, and, while we would not be disposed to disturb the verdict and judgment on the weight of the evidence, we have carefully examined this record with a view of determining whether the proper rule as to the weight of evidence and degree of proof has been applied. We are convinced by such examination and analysis that there is no doubt that Sabo lay in wait for G-ruich and that he shot and killed Painter, believing him to be G-ruich. It must be admitted, however, that the mere fact of his guilt, however clearly established, is not conclusive upon this court, but that it is' our duty to ascertain whether or not
 
 *235
 
 Sabo was given a fair trial, and whether or not errors intervened which were material and prejudicial to the substantial rights of the accused. We will therefore take up the various assignments of error.
 

 It is claimed by counsel for the defendant that the court erred in permitting a wide range of cross-examinatiofi of the witness Matthews. After Matthews had repudiated his first story, the state did not call him as a witness at the trial, but Matthews was called by the defendant, and testified that he knew nothing of the crime, and that he had been home all evening and all night. Upon cross-examination by the prosecutor, he made many statements of conversations with Sabo of a damaging nature, which were clearly competent, concerning which no error was claimed. In further cross-examination, the prosecutor inquired in detail of the statements made at police headquarters, and in the course of the cross-examination referred to a signed statement. In the signed statement and other statements claimed to have been made by Matthews at police headquarters there were contained matters which did not tend to contradict his testimony in chief, and which had no relation to his whereabouts on the night of May 25th, but which, nevertheless, did tend to indicate Sabo’s guilt. Those statements were clearly incompetent, but no objection was made by counsel for the accused, no motion was made to withdraw the testimony and no request was made for any charge in reference to it. After Matthews had been fully cross-examined concerning every detail of his statements at police headquarters, signed and unsigned, the written statement was offered in
 
 *236
 
 evidence by the state, and admitted over objection of counsel for Sabo. Thereupon counsel for Sabo proceeded to re-examine Matthews concerning the statements in the same minute detail, and Matthews was repeatedly re-examined by counsel for both the state and the defense concerning the statements, covering approximately 100 pages of the record. All this was without any objection on the part of counsel for Sabo, except that he excepted to the introduction of the signed statement.
 

 The theory of counsel for Sabo in permitting this wide range of cross-examination, and in participating in it himself, has not been explained to this court, and this court was not able to make inquiry on that subject, because different counsel appeared in this court. It is conceivable, however, that inasmuch as much of the statement had already been brought into the record by proper cross-examination for purposes of contradiction, it seemed desirable that the entire statement should be admitted in order that, upon redirect examination, Matthews could be afforded an opportunity to repudiate the statement in its entirety, and to testify, as he did testify, of the circumstances under which the statement was procured. It is, of course, the duty of a court to interfere without objection when the testimony is taking such a wide range that its tendency is to cause an unfair trial and a miscarriage of justice, but in this instance a reviewing court cannot say that it was the duty of the trial court to interfere. The earlier statements of Matthews could hot be repudiated without the complete statements having first been made known to the court and jury.
 

 It is further argued by counsel for the accused
 
 *237
 
 that, even though there was no duty on. the part of the court to volunteer and limit the range of the cross-examination and the re-examination, it was nevertheless the duty of the court to charge the jury that such testimony should he considered only for the purpose of contradiction of the witness, and not as substantive evidence of the defendant’s guilt. Clearly the jury should not have considered certain portions of the statement for any purpose, and certain other portions should only have been considered so far as they tended to contradict and to discredit the witness, but, in the absence of a request for an instruction, and in the absence of any objection to challenge the court’s attention to the matter, we have concluded that there is no reversible error upon this feature of the record. . This conclusion is in entire harmony with the decision in
 
 Patterson
 
 v.
 
 State,
 
 96 Ohio St., 90, 103, 117 N. E., 169, L. R. A., 1918A, 583. In the early case of
 
 Geauga Iron Co.
 
 v.
 
 Street,
 
 19 Ohio, 300, the principle was declared:
 

 “Error cannot be assigned upon any ruling of the court in the progress of a trial, unless by the bill of exceptions it appears that an exception was taken to such ruling. ’ ’
 

 This principle thus early declared has been consistently followed, and no occasion for departure from it is found in this record.
 

 After the defense had rested, the state introduced testimony in rebuttal to contradict some of the testimony of Matthews. Ordinarily, this would be gross error. The record shows, however, that counsel for Sabo interrogated Matthews at length upon matters which were brought out during the course of the cross-examination, and elicited many answers of an
 
 *238
 
 affirmative nature, and ■which, were clearly defensive to the main charge because they were contradictory to testimony given by Lengyel. Such testimony became substantive testimony for the defense, and therefore became rebuttable by the state. The rebuttal testimony was therefore justified by the peculiar circumstances which called for its introduction.
 

 A further assignment of error related to the cross-examination of Mrs. Plangar, the mother of Sabo. Mrs. Plangar had not only testified that Sabo was at home on the night of the 25th, thereby seeking to establish an alibi, but she further testified to many matters indicating good moral character on the part of her son, and indicating a good home influence and environment. Thereupon the state in cross-examination inquired as to the cause' of her husband’s death in Europe, and developed that she had given birth to an illegitimate child. It is difficult to understand why the prosecutor should have asked such questions, and it is equally difficult to account for the court permitting them to be answered. They could not have had any effect upon the question of the defendant’s guilt; neither is it believed that the jury were influenced in reaching a verdict of guilt by such testimony. On the other hand, we cannot say that this was prejudicial error. The defendant’s character was placed in issue by the opening statement to the jury, and all through the testimony offered in defense are found statements indicating that Sabo was a good boy; that he helped his mother; that he was living under good home environment and influence; and, even in the argument of the case to the jury, his counsel dwelt upon his good charac
 
 *239
 
 ter and Ms good qualities. It is earnestly argued by Ms counsel that Ms character was not at any time made an issue. With this view we cannot agree. Ordinarily, the character of a person charged with crime is placed in issue by his counsel offering evidence of good general reputation.
 

 In a murder case, such reputation must relate to his being a peaceable, law-abiding citizen. While such is the ordinary manner of raising an issue of character, it is well settled by the authorities that the issue can be raised in other ways. In
 
 Jackson
 
 v.
 
 State,
 
 76 Ga., 551, it was decided that the character of the defendant was put in issue by his statement alone. In the instant case there was not only the statement to the jury, but evidence tending to establish good character, and the argument to the jury upon that point. It was decided by this court in
 
 Gandolfo
 
 v.
 
 State,
 
 11 Ohio St., 114, that:
 

 “Defendant who, by the nature of the issue, is entitled to give evidence of his character for peace and quietness, is not limited to proving what people may have said of him, as to his being or not being a quiet and peaceable man, but is entitled to inquire as to his character from those acquainted with him, and they are authorized to speak from his general peaceable and quiet conduct, and from not having known or heard anything to the contrary. ’ ’
 

 The same principle was affirmed in
 
 Griffin
 
 v.
 
 State,
 
 14 Ohio St., 55. In
 
 State
 
 v.
 
 Dickerson,
 
 77 Ohio St., 34, 82 N. E., 969, 13 L. R. A. (N. S.), 341, 122 Am. St. Rep., 479, 11 Ann. Cas., 1181, this principle was discussed at length, where the earlier cases were followed and approved. It may easily happen that a defendant could not prove general good reputation
 
 *240
 
 for peace and qniet, and yet his intimate friends and members of his immediate family might testify in his behalf as to his good character, and that he was a peaceable and qniet citizen, and thereby create a much more favorable situation than by witnesses testifying to his general good reputation. A careful analysis of this entire record shows that this was the situation here, and it was therefore not improper to show by cross-examination of the same witnesses that the home influence and the home environment were not as favorable as the direct testimony tended to show. It cannot therefore.be said that this feature of the case was reversible error.
 

 Another assignment of error relates to showing by cross-examination of defendant’s witnesses that Sabo was continually being involved in quarrels, and fighting. Those altercations were not crimes; neither were they offenses similar to that for which Sabo was on trial. That evidence was not introduced as bearing upon intent, but only as reflecting upon character, and as affecting defendant’s credibility as a witness. It has been urged that it was the duty of the court to charge that all of such testimony should be considered only upon the quéstion of credibility, but, in the absence of a request for such instruction, the omission to so instruct is not reversible error. Some of this testimony was brought out by cross-examination of the defendant himself; other portions by cross-examination of other witnesses called by the defendant. No objections were made to the cross-examination; no exceptions were taken; and no motion made to eliminate the testimony or to instruct the jury that the testimony should be considered only as affecting the credibility of the de
 
 *241
 
 fendant. The character of the defendant having become an issue in the case, it may well be that counsel for the defendant recognized that fact and conceded its admissibility. Counsel for the defendant not only did not object to the testimony, but proceeded to re-examine the witnesses covering the same matters, and by such re-examination answers were given which were much more favorable to the defendant.
 

 In the course of the cross-examination of the defendant the prosecuting attorney obtained admissions which should have been quite sufficient for his purpose, but he nevertheless called witnesses in rebuttal. Objections were made by counsel for defendant to some of the questions ashed in rebuttal, but they were so few and inconsequential that it was apparent that he was not really objecting to the general trend of the testimony. The rebuttal testimony did not differ in any essential respects from the admissions made by the defendant himself. The admissions made by the defendant in the course of his cross-examination were such that the state should have been satisfied, and no reason is apparent for introducing rebuttal testimony, but, it having been introduced, and it having been fairly justified by the re-examination of defendant’s counsel, no apparent prejudice resulted. Defendant’s1 character having become an issue, and defendant’s admissions upon his own cross-examination covering the same matters elicited by the cross-examination of other witnesses, and the rebuttal throwing no new light upon the subject, we are led irresistibly to the conclusion that there was no prejudicial error.
 

 In
 
 Hanoff
 
 v.
 
 State,
 
 37 Ohio St., 178, 41 Am. Rep.,
 
 *242
 
 496, it was decided that the limits of cross-examination of the defendant on matters not relevant to the issue for the purpose of judging character and credit from his own voluntary admissions rest in the sound discretion of the court trying the cause, and the judgment will not he reversed, except for abuse of that discretion to the prejudice of the accused. That pronouncement was made in a first degree murder case. In the instant case, the situation is much more favorable to the judgment rendered, because there could be no abuse of discretion so long as the court was not called upon to exercise any discretion. That case is authority for the proposition that, when a defendant offers himself as a witness, and testifies in his own behalf, he thereby subjects himself to the same rules, and may be called upon to submit to the same tests as to his credibility as may legally be applied to other witnesses.
 

 Another assignment of error relates to the refusal of the court to permit a certain witness to testify on the ground that she had remained in the courtroom in violation of an order for separation of witnesses made by the court before the trial began. Again we find no exceptions to that ruling. The court went into the matter thoroughly in the absence of the jury, but the record does not disclose what took place, and, inasmuch as the court finally ruled that the witness should not testify, and counsel made no objection and took no exception thereto, it will be assumed that the reasons were satisfactory to counsel for the defendant at the time.
 

 Another ground of error relates to alleged misconduct of counsel for the state in the argument of the cause to the jury. It is complained that, in the
 
 *243
 
 course of the argument, the prosecuting attorney stressed the character of the defendant, as shown by the altercations in which he had been engaged, and other matters brought out upon cross-examination, as hereinbefore referred to. It having already been shown that this testimony was not erroneously admitted, it follows that the arguments of counsel based thereon were likewise not erroneous. Upon this point it may be further stated that no exceptions were taken to the arguments of counsel; neither was the court called upon at any time to admonish counsel during the course of the arguments. '
 

 The final assignment of error which we shall consider, and which is the most important of any of the assignments, relates to the charge of the court. In addition to denial of any knowledge of or participation in the crime, the defendant produced witnesses to prove that he was at another place at the time when the murder was .shown to have been committed. Upon this point the court gave the following instruction :
 

 “The defendant, under the plea of not guilty, and as an independent defense, says that he was at another place, and therefore could not have committed the offense name in the indictment. That is what is termed in law an alibi, signifying or meaning ‘elsewhere,’ and means in law a defense interposed by the defendant by which he attempts to prove that, at the time of the commission of the offense charged in the indictment, he was at some other place than that where the crime was alleged to have been committed.
 

 “An alibi is a legitimate and proper defense to make, and, if satisfactorily made, is conclusive. It
 
 *244
 
 is obviously essential to the satisfactory proof of an alibi that it should cover the whole of the time of the crime in question, or so much of it as to render it impossible that the prisoner could have committed the act. If the defendant was not at the place of the commission of the alleged crime, as a matter of course, he could not have committed the crime himself by his own hands.
 

 “Whether or not the defendant has proved an alibi is a question of fact for the jury to determine, and, in so doing, you should look to and consider all the testimony upon the subject and which in any way tends to prove or disprove it.”
 

 In an earlier portion of the charge, the court had already correctly instructed the jury upon the presumption of innocence, and on the requirement that the state should overcome that presumption, and that the jury should be satisfied of the guilt of the accused beyond a reasonable doubt before finding him guilty, and, if not so satisfied, that he should be acquitted; that it is sufficient if the evidence merely creates in the minds of the jurors a reasonable doubt of the existence or truth of material facts necessary to establish every element of the crime and its commission by the accused. The court very properly and fully instructed the jury upon the subject of reasonable doubt. Immediately following the above-quoted instruction the court further stated:
 

 .“It is not. required that the defendant prove this defense beyond a reasonable doubt, nor by a preponderance of evidence, to entitle him to an acquittal. It is sufficient if all the evidence raises a reasonable doubt as to his presence at the time and place of the commission of the crime charged;.or, in other
 
 *245
 
 words, you must determine from the whole evidence whether it was shown beyond a reasonable doubt that the defendant committed the crime with which he is 'Charged.”
 

 Counsel has cited and quoted from
 
 State
 
 v.
 
 Norman,
 
 103 Ohio St., 541, 134 N. E., 474, and argues that, upon the authority of that case, the above-quoted instruction is erroneous. The language of the trial court in
 
 State
 
 v.
 
 Norman
 
 was confused, contradictory, and incomplete. The Court of Appeals in that ease had reversed the judgment, and this court affirmed the Court of Appeals, believing that the case should be retried, and for more definite, clear, and complete instruction on the subject of alibi. We are of opinion in the instant case that no criticism can attach to the charge on the subject" of alibi, except to that part which calls it an independent defense. The court did not call it an affirmative defense, which manifestly would have placed an added burden upon the defendant, and, while not approving the use of the word “independent,” it is not believed that the jury could have been misled-by the use of that word, especially in view of the court’s very clear instruction both before and after the instruction complained of. The former decisions of this court have clearly pointed out the difference between an alibi and an affirmative defense, such as insanity, and nothing would be gained by elaborating upon that distinction in the instant case.
 

 Alibi is universally discussed as a defense. It is a defense in the sense that the defendant is not required to advise the state in advance of the trial that such testimony will be offered, and it is almost the
 
 *246
 
 universal practice to keep the state uninformed on that subject until the state has rested its case in chief.
 

 It is further correctly considered as a defense in the sense that the state is not bound to meet it until the issue has been raised by defensive testimony. It is further a defense in the sense that the state may offer rebutting testimony, though no testimony was adduced by the state on that subject in submitting its case in chief. It is only inaccurate to call it a defense in the sense that it is not in the nature of confession and avoidance. Insanity is regarded as an affirmative defense, because commission of the crime may be admitted in all its details, and the defendant found not guilty on the ground of nonresponsibility. An alibi conclusively presupposes that the defendant had no participation in the commission of • the crime, and that it was impossible for him to have participated because of his absence during the time and at the place of the commission of the crime. The instruction in the instant case did not limit the consideration of alibi to the testimony offered by the defendant. The jury were required to consider all the testimony upon the subject which in any way tended to prove or disprove it.
 

 It is further complained that the court erred in the statement, “It is obviously essential to the satisfactory proof of an alibi that it should cover the whole of the time of the crime in question, or so much of it as to render it impossible that the prisoner could have committed the act.” It is earnestly insisted that this requires the defendant to prove tbe impossibility of his guilt. On the contrary, it only defines the range that the testimony on the subject of alibi must cover. That is to say, the jury must
 
 *247
 
 believe that the accused was so far distant from the scene of the crime at the time when it was shown to have been committed that he could not have traversed that distance within the time shown. In other words, the jury must have found under the instruction given that the state had not shown him to be sufficiently near to the place where the crime was committed at the time it was committed as to remove all reasonable doubt of his presence at that time and place. Upon a consideration of the entire charge, we have no hesitation in approving that portion relating to the subject of alibi. After the conclusion of the court’s charge, counsel for the defense made a suggestion upon the subject of alibi, and the court thereupon gave the instruction as requested, and thereupon counsel for defendant expressed himself as satisfied, and took no exceptions to the charge.
 

 One other complaint should be noticed. It is urged that the court erred in limiting the cross-examination of one witness. This is referred to because the burden of the claims and arguments of counsel for the defendant in this error proceeding relates to the wide range of cross-examination of other witnesses, and the claim that it was the duty of the court to interfere voluntarily in order to put an end to the almost limitless extent of the cross-examination of certain witnesses. If patience ceased to be a virtue in the case of the one lone witness, the court should not be criticised for the action taken.
 

 Having disposed of each of the assignments of error, there should be some reference to the wide range of the testimony and the few objections and exceptions on the part of defendant’s counsel. The
 
 *248
 
 trial covered a period of eighteen days, and a careful examination of the record easily convinces that it should have been tried in three or four days. The unusual period of time consumed in the trial of this rather simple case is not out of harmony with the fact that, although the prisoner was apprehended on June 8, 1926, the trial did not. begin until March V, 1927. This court may find some comfort in the fact that the cause was docketed in this court on March 10,1928, and is now being disposed of approximately three months later. We are not advised as to the cause of these delays, but cannot refrain from remarking that the delays have not tended to promote justice; neither did the long period',of time consumed in the trial tend to freedom from error. It is urged that, even though no exceptions were taken to any of the assigned errors, the atmosphere of the trial was such, as shown by the record, that the defendant did not have the benefit of a fair trial. The trial court overruled a motion for new trial, and the Court of Appeals affirmed the judgment of the trial court, and we are not able to say that the cold record as it has been presented to us indicates a failure to observe any constitutional guaranties, or that the defendant was not accorded a full and fair trial; neither can we say that justice demands that exceptions should be regarded, though none were noted. Counsel for the defendant have argued that “substantial justice” does not apply to a criminal case. The Legislature has provided in Section 13745, General Code, that a new trial may be granted in a criminal case for “any of the following causes affecting materially his substantial rights.” Unless there were matters affecting materially his substan
 
 *249
 
 tial rights, which were shown to be erroneous, it was the duty of the trial court to overrule the motion for new trial; and it was therefore the duty of the Court of Appeals to affirm the judgment; and it is likewise the duty of this court to affirm the judgment of the Court of Appeals.
 

 It is further urged that the judgment of conviction should be reversed by this court because of the alleged inexperience and incompetency of counsel in the trial court. To this it may be answered that it does not appear that any testimony was suppressed, or that the defendant was denied the benefit of any testimony which he was able to produce. No such claim is made. The real ground of the complaint was that certain matters were developed from cross-examination, which now appear not to have been to his advantage.
 
 We
 
 shall not determine the wisdom or unwisdom of the theories of counsel in making the defense in the trial court. The judgment must be affirmed.
 

 Judgment affirmed.
 

 Day, Allen and Kinkade, JJ., concur.