The State of Ohio, Appellee, *v.* Brennan, Appellant.

(No. 3987—Decided May 9, 1949.)

*Mr. Alva J. Russell,* prosecuting attorney, and *Mr. Jackson B. Morris,* for appellee.

*Mr. E. Guy Hammond,* for appellant.

Doyle, J. This appeal is by the defendant from a judgment of the Common Pleas Court of Summit County, entered upon a finding of guilt against the said defendant of the crimes of burglary of an inhabited dwelling house in the night season, and grand larceny.

The defendant, William Brennan, was charged by the grand jury in two separate indictments, containing several counts each, with the crimes of (1) breaking and entering an inhabited dwelling house in the night season with the intent to commit larceny, (2) grand larceny, (3) forgery, and (4) receiving stolen property. He waived a jury in compliance with the statutes, was tried by the court, and was found guilty of all of the charges except that of receiving stolen property, on which charge he was found not guilty.

The appeal to this court is, as heretofore stated, from the judgment of guilt on the indictment charging burglary and grand larceny. There apparently is no appeal from the conviction, on the other indictment, of the charge of forgery; at any rate, there is no claim of error concerning that conviction.

It is urged here (1) that said judgment is ''against the weight of the evidence and contrary to law,'' and (2) that neither the charge of burglary nor the charge of grand larceny was established beyond a reasonable doubt.

There is evidence in the record tending to prove that on Saturday, October 25, 1947, someone burglarized the home of Sheldon B. Hoover in the city of Akron and stole 37 United States Savings Bonds, Series E, each with a par value of $25 or more, and other miscellaneous papers and documents, included in which were deeds, mortgages, contracts, social security cards, insurance papers, etc. Two days later, on Monday morning, several of the local banks and loan companies were notified to be on the alert for someone who might attempt to cash the bonds. A short time thereafter, a clerk at the Dime Savings Bank suspicioned a person (the defendant Brennan) who sought to have bonds cashed, and notified the police. The defendant was thereupon arrested.

The bonds which were presented for cashing were identified as being among those stolen in the burglary, and bore the purported signature of Sheldon B. Hoover (the owner). The accused, when asked for identification material by the bank clerk, presented documents bearing the name of Sheldon B. Hoover, which had been stolen in the burglary. Shortly after the arrest of the appellant, his room was searched and there was found a flashlight and various papers (automobile operator's license, social security card, etc.), all stolen from the Hoover home at the time of the burglary.

In the trial, the defendant took the witness stand in his own defense and denied the burglary and larceny. He gave a strange account of his possession of the bonds and the various papers. He said that on Monday morning, as he was going from barroom to barroom in downtown Akron, he met a convivial person who asked him if he would, for a consideration, get some bonds converted into money. Upon his acceptance of the charge, he was given the bonds and identification papers. He then signed Mr. Hoover's name on the bonds, but, before going to the bank, went to his home where he left some of the identification papers (later found in his room by the police). He then went to the bank, impersonated Mr. Hoover, and was arrested. There was, however, substantial evidence, which apparently the trial judge believed, to the effect that defendant was at another bank cashing other of the stolen bonds, at the time he claimed he made the trip to his home.

In addition to the defendant's testimony in his own defense, two witnesses, his mother and his brother, testified, by way of alibi, that at the time of the burglary he was at his home with them.

1. It has long been the law of this state that, where

a burglary has been committed and property stolen as a part of the criminal act, the fact of the subsequent possession is some indication that the possessor was the taker, and therefore the doer of the whole crime.

In *Methard v. State*, 19 Ohio St., 363, it is said:

"3. The facts that a building was burglariously entered, goods stolen therefrom, and the possession by the accused soon thereafter of the goods stolen, are competent evidence to go to the jury, and with other circumstances indicative of guilt, such as giving a false account, or refusing to give any account, of the manner in which, or the means by which, he came into possession of the stolen goods, may afford a strong *presumption of fact* of the guilt of the accused, and warrant the jury in finding him guilty of both the burglary and larceny. But the facts of burglary, of larceny, and of possession of the stolen goods soon thereafter by the accused, do not, alone, raise a *presumption of law* that he is guilty of both the burglary and larceny."

From the above cited case it is apparent that, in this state, we are not troubled with the question wheth er an accused's possession of stolen goods raises a "*presumption*" that he is a thief. The learned Chief Justice in *Methard v. State, supra,* was careful to distinguish between a "presumption of fact" and a "presumption of law." Of course, if the possession created a presumption of law, it would place upon the accused a duty of producing evidence to satisfactorily explain his possession, and a failure in this respect would require the jury to convict. On the other hand, the words "presumption of fact" were used, and it is apparent that the Ohio court used the words to denote a permissible inference which will support a conviction of burglary and larceny, when connected with actual

proof of a burglary and a larceny and other circumstances indicative of guilt, such as "giving a false account * * * of the manner in which, or the means by which, he came into possession of the stolen goods."

See:

1 Wigmore on Evidence (3d Ed.), Section 152.

9 Wigmore on Evidence (3d Ed.), Section 2513.

9 American Jurisprudence, Burglary, Section 64.

2. The appellant states in argument that "the mere inference permitted to be drawn from the remote fact of possession of the goods cannot be said to prevail, in any just sense, over the unimpeached, positive testimony of two witnesses, strengthened and supported by the presumption of innocence which the law allows * * *. Indeed, to minds ordered by the principles of reason and of judgment, this 'prima facie' product can amount to no more than a faint suspicion, and we are to keep in mind that it can be given the dignity of evidence only when it is not explained, or there is no other evidence to refute it."

As heretofore stated, two witnesses testified to the presence of the accused at a place other than the place of the burglary at the time it was committed. It is now asserted that the inference which may be drawn from the fact of possession cannot prevail "over the unimpeached * * * testimony" of the alibi witnesses and "the presumption of innocence which the law allows."

The following statement taken from 32 Corpus Juris Secundum, Evidence, Section 1038, is presented to sustain the claims made:

"Uncontradicted or undisputed evidence should ordinarily be taken as true. More precisely, evidence which is not contradicted by positive testimony or circumstances, and is not inherently improbable, incredible, or unreasonable, cannot be arbitrarily or capri-

ciously discredited, disregarded, or rejected, even though the witness is a party or interested; and, unless shown to be untrustworthy, is to be taken as conclusive, and binding on the triers of fact.''

On the theory that in this country it is not a requirement that an accused establish his innocence, but for the prosecution to establish his guilt beyond a reasonable doubt, it is generally held that the accused does not have the burden of proving an alibi. Such is the law in Ohio. *Toler* v. *State*, 16 Ohio St., 583; *State* v. *Norman,* 103 Ohio St., 541, 134 N. E., 474; *Sabo* v. *State,* 119 Ohio St., 231, 163 N. E., 28.

While the prosecution must prove the guilt of the prisoner, there is no such burden laid on the prisoner to prove his innocence, and it is sufficient for him to raise a reasonable doubt as to his guilt by way of alibi or other defense; he is not bound to satisfy the triers of the facts of his innocence.

''If the proof as to an *alibi* raises a reasonable doubt in the minds of the jury as to whether the accused was present at the place and time where and when the crime was committed, the accused is entitled to have the defense fairly treated like any other defense and is not obliged to establish that it was impossible for him to commit the act charged. If under the evidence tending, if true, to prove an *alibi,* it may have been *possible* for the defendant to have committed the crime, it is still for the jury to determine whether, if the evidence is true, he availed himself of the possibility it afforded.'' *People* v. *Barbato,* 254 N. Y., 170, at pp. 178-179, 172 N. E., 458.

And see:

6 Ohio Jurisprudence, Burglary, Section 38.

As heretofore said, the jury determines the credibility of witnesses, and, in criminal cases, determines whether the evidence of an alibi creates a reasonable

doubt. We are not gifted with the power to discern truth with mathematical certitude. Witnesses, and especially interested witnesses, sometimes impose upon courts, stories which are creations of their own imagination. And so the law goes further than that which is stated by counsel, *supra*, taken from the text of Corpus Juris Secundum. In fact, reading further in the same section, may be found the law as we recognize it to be in this state:

"A fact is not undisputed merely because one or more witnesses testify to it and no one denies it, since it is for the trial court to determine what credence it will give to witnesses. Further, evidence is not regarded as undisputed if it is at variance with the facts and circumstances in the case, or with reasonable inferences therefrom or from the evidence; and reasonable inferences from circumstances or physical facts may outweigh undisputed oral testimony. Thus, the general rule that uncontradicted evidence cannot be disregarded, or is to be taken as true, is subject to many qualifications and exceptions; and it has even been declared a general rule that the trier of facts may disregard or discount uncontradicted evidence. The common view is that evidence not directly contradicted is not necessarily binding on the triers of fact, and may, in proper circumstances, be disbelieved and given no weight, in whole or part, especially where the witness is a party or otherwise interested * * *."

Reference is made to the many authorities in the footnotes supporting this text.

As we view the record before us, the prosecution introduced sufficient competent evidence to prove every essential allegation in the indictment beyond a reasonable doubt.

The burglary of and larceny in an inhabited dwelling house, and the possession of the stolen property by the

accused, is established beyond peradventure. His fanciful explanation of possession was such as a court or jury could reasonably conclude to be a false and untrue narration of an imaginary experience. This, coupled with the admitted felonious forgery of the name of the owner of the bonds, presented circumstances so indicative of his guilt of the burglary and larceny that the judgment of the trial court should and must be affirmed.

*Judgment affirmed.*

STEVENS, P. J., and HUNSICKER, J., concur.