DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Anthony Simon, appeals his conviction and sentence from the Huron County Court of Common Pleas. A grand jury indicted appellant for breaking and entering, a violation of R.C. 2911.13(A) and a felony of the fifth degree. Appellant entered a plea of not guilty, waived his right to a jury trial, and the matter proceeded to a bench trial on April 22, 2004. Appellant was thereafter convicted of breaking and entering and sentenced to ten months incarceration.
 {¶ 2} Appellant sets forth a sole assignment of error:
 {¶ 3} "I. The trial court erred to the prejudice of the Defendant-Appellant when it overruled his motion for acquittal at the close of the state's case in chief, when it subsequently convicted him of Breaking and Entering, and when it thereafter overruled his motion for a new trial, inasmuch as there was insufficient evidence to sustain a conviction."
 {¶ 4} The following facts were adduced at trial. On January 27, 2004, Kenilee Lanes, a bowling alley in Huron County, reported that a break-in had occurred. The first employee to arrive that morning discovered that the rear entrance, boarded over by a wooden garage door, had been pried open. Several video game machines had likewise been pried open, and were found empty. The owner estimated that approximately $300, all in quarters, had been removed from the machines. A crowbar was found at the scene which did not belong to the bowling alley; however, it carried no identifying marks or fingerprints.
 {¶ 5} An investigating officer notified all area banking establishments of the break-in, and advised them to be aware of and report any person exchanging a large amount of quarters. The day after the break-in was reported, appellant arrived at one of the notified banks, approached a teller with a paper bag and a plastic container filled with quarters, and asked that they be counted and exchanged. The teller, while sorting and counting the quarters, noticed that no other coin denominations were present and that no foreign currency was included. The teller also found a small piece of black metal buried in the sack of quarters. Suspecting that this transaction was consistent with the police description, she engaged appellant in conversation and asked his name. He gave her an alias. She gave appellant the money exchanged from the quarters, watched him exit the bank and walk toward a fast-food restaurant, then called the police and described appellant. The teller later gave an investigating officer the small piece of black metal.
 {¶ 6} Shortly afterwards, a police officer approached appellant while he was eating at the restaurant the teller had indicated; his appearance matched the teller's description. The officer asked appellant whether he had just exchanged a large amount of quarters. Appellant admitted that he had. When asked how he had obtained the quarters, appellant replied that he had been saving them over a period of time.
 {¶ 7} Another officer took the piece of black metal to Kenilee Lanes, and found that it appeared to match a piece of broken metal on a pried-open game machine. The piece of metal was given over for forensic analysis. Appellant's motion in limine to exclude expert testimony and forensic evidence related to damage to the video game was denied. At trial, a forensic analyst gave expert testimony establishing that the piece of black metal hidden in appellant's batch of quarters was a broken piece of the bowling alley's video game.
 {¶ 8} At the close of the state's case, appellant made a motion for acquittal, which motion was denied. Appellant did not adduce further evidence in defense. After considering the testimony of the officers, the bank teller, the victims, and the forensic evidence, appellant was found guilty of breaking and entering. At sentencing, appellant was sentenced to ten months incarceration; he does not challenge the sentence on appeal.
 {¶ 9} We parse appellant's assignment of error into three separate issues. First, appellant briefly argues that the trial court erred when it overruled his motion for acquittal at the close of the state's case in chief. "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman
(1978), 55 Ohio St.2d 261, syllabus. On review, an appellate court must construe the evidence in a light most favorable to the state, State v.Wolfe (1988), 51 Ohio App.3d 215, 216, and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt. State v. Miley (1996), 114 Ohio App.3d 738, 742. A motion for acquittal tests the sufficiency of the evidence. Id. Sufficiency is a test of adequacy, State v. Thompkins (1997),78 Ohio St.3d 380, 386, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955),162 Ohio St. 486.
 {¶ 10} Second, appellant's motion for new trial was a challenge to the manifest weight of the evidence. "Weight of the evidence" refers to the "inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis in original.) 78 Ohio St.3d at 387. We review the trial court's decision to deny appellant's motion for new trial for an abuse of discretion.State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus, rehearing denied (1990), 55 Ohio St.3d 718, certiorari denied (1991), 499 U.S. 961.
 {¶ 11} Third, appellant argues that insufficient evidence existed to support his conviction, and that based on available evidence, no rational trier of fact could have judged appellant guilty of breaking and entering. Applying the "sufficiency of the evidence" standard, a reviewing court determines whether the evidence submitted is legally sufficient to support all elements of the offense charged. State v.Thompkins (1997) 78 Ohio St.3d 380, 386-387. Specifically, we must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 12} Since appellant treats each of these three issues concurrently in his brief, we shall likewise address his arguments for each issue concurrently. One argument pivots on appellant's allegation that the trial court impermissibly shifted the burden of proof to defendant. Appellant argues that evidence that he possessed goods stolen in a break-in required him to advance proof of innocence to avoid a presumption of guilt for the breaking and entering. Appellant's argument amounts to an assertion that his possession of the goods is insufficient circumstantial evidence from which to establish the elements of breaking and entering.
 {¶ 13} Appellant's possession of the quarters is circumstantial evidence that he broke and entered into Kenilee Lanes. Appellant's argument essentially posits that because his possession of the quarters is direct evidence of a different crime — receiving stolen property — that his possession alone is insufficient to create a valid inference that he committed the crime of breaking and entering. However, direct evidence is not required to support a conviction; a fact may be proved by circumstantial evidence as well as by direct evidence. See State v.Nevius (1947), 147 Ohio St. 263: "In a criminal prosecution the corpusdelicti may be established by circumstantial evidence where the inference of the happening of the criminal act complained of is the only probable or natural explanation of the proven facts and circumstances." Id. at paragraph five of the syllabus. The logical extension of this rule supports the rationale of established Ohio law that possession of stolen goods can establish that the possessor not only stole the goods, but that he also broke and entered into the place from whence the goods were stolen. Indeed, "substantially similar inferences have long been a part of our legal heritage." State v. McAllister (1977), 53 Ohio App.2d 176,180-181, citing Barnes v. United States (1973), 412 U.S. 837.
 {¶ 14} One such heirloom directly addresses appellant's circumstances. In State v. Brennan (1949), 85 Ohio App. 175, the defendant was convicted of burglary after attempting to cash some bonds bearing the victim's name. In sustaining the conviction, that court stated: "It has long been the law of this state that, where a burglary has been committed and property stolen as a part of the criminal act, the fact of the subsequent possession is some indication that the possessor was the taker, and therefore the doer of the whole crime." Id. at 178. Indeed, Brennan's rule derives from a more antiquated source: In Methardv. State (1869), 19 Ohio St. 363, a defendant was charged with burglary after attempting to sell, the day after a burglary of a smokehouse, several hams and sides of meat. The court reversed the conviction due to erroneous jury instructions; however, it clearly stated the rule that a presumption of fact, that an accused is guilty of burglary, arises when "a building was burglariously entered, goods stolen therefrom, and the possession by the accused soon thereafter of the goods stolen, * * * and with other circumstances indicative of guilt, such as giving a false account, or refusing to give any account, of the manner in which * * * he came into possession of the stolen goods * * *." Id. at 368. Methard andBarnes dispense with appellant's contention that this inference does not alone satisfy the reasonable doubt standard; neither does the inference offend due process simply because shifting the burden to the defendant is the practical effect of the inference. 53 Ohio App.2d at 178.
 {¶ 15} Applying the foregoing rules, the parallel circumstances "indicative of guilt" are clear. Here, a bowling alley was broken into; in Methard, a smoke-house, and in Brennan, a home. Appellant was found in possession of over $300, all in quarters; Methard, with hams and sides of meat; in Brennan, with bonds bearing the victim's name. Here, the "other circumstances", in addition to appellant's possession, include a piece of a video game machine buried in a bag of quarters and appellant's use of an alibi at the bank; in Brennan, the defendant had given false identification and other burglarized items were found in a search of his home; in Methard, the court remanded that determination to the trier of fact. Although the stocks in Brennan were easily identifiable and quarters are fungible, the piece of metal buried in the quarters which matched the broken video game sufficiently indicates the origin of the quarters.
 {¶ 16} Appellee correctly notes that appellant's argument relies upon a premise of law which is no longer controlling in Ohio. That is, prior to 1991, juries were instructed that when circumstantial evidence alone creates inferences establishing the elements of a crime, that evidence must not also engender any reasonable hypothesis of innocence. See Statev. Kulig (1974), 37 Ohio St.2d 157, overruled by State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus. Appellant's argument that his possession of the quarters allows for a hypothesis that he merely received stolen property from another person, who actually broke into Kenilee Lanes to steal the quarters, carries little to no weight. The trier of fact, applying the Jenks rule, supra, may reasonably conclude that inferences drawn from the evidence more strongly support a finding of guilt rather than innocence; the trier of fact is no longer required to ascertain whether all inferences exclude all hypothesis of innocence. Inferential conclusions always rest upon probabilities; the strength of an inference is garnered from the degree of probability it has of being true. As in State v. Rose (Sept. 16, 1985), 4th Dist. No. 1123, the inference from an incredible explanation of possession of stolen goods to an inference that the possessor broke and entered into the building which contained the goods is "common sense." Id. at 6.
 {¶ 17} An additional point regarding appellant's motion for a new trial deserves attention. Appellant makes much of the trial court's statement at his conviction that the coins had been taken to the bank "the same day that the break-in had happened." The court also stated that it considered the time elapsed between the break-in and appellant's attempt to exchange the quarters at the bank to be short. When appellant's counsel notified the court that the actual time elapsed was approximately 30 hours, the court stated it was "still convicted that Simon was the person who took the — broke into the place and took the coins. Whether it was ten hours, fifteen hours, 30 hours, it's still a short period of time, the Court is still convicted he was found with the coins and with a small piece that came from the crime scene." We agree that appellant's possession of the quarters at the bank 30 hours after the break-in at Kenilee Lanes qualifies as "soon thereafter", pursuant toMethard. See, e.g., State v. Smith (Jan. 27, 1997), 6th Dist. No. L-96-309 (appellant caught in possession of goods stolen a "few days" before); State v. Cody (June 16, 1989), 6th Dist. No. H-88-33 (appellant found in possession of goods stolen over 20 days before). Neither do we accept appellant's argument that the application of Methard to the crime of breaking and entering creates a slippery slope, at the bottom of which a possessor of stolen goods may be held culpable for a murder committed inside the burglarized house from which the goods were taken. This rule is limited to "the permissive inference that the defendant is guilty of a theft offense." Id. at 7.
 {¶ 18} The sufficient evidence presented in this case supports a conclusion that appellant broke and entered into Kenilee Lanes in order to commit the theft. Moreover, the evidence also presented the trial court with a sufficient basis to deny appellant's motion for acquittal and motion for a new trial. For those reasons, appellant's assignment of error is not well-taken, and the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Huron County and for which execution is awarded. See App.R. 24.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Skow, J., Concur.