OPINION
{¶ 1} Defendant-Appellant, Thomas Peterson, appeals the decision of the Columbiana County Court of Common Pleas that convicted him of breaking and entering in violation of R.C. 2911.13(A) and sentenced him accordingly. On appeal, Peterson argues that he could not be convicted of this offense since there was no evidence that he was the principal offender and the jury was not instructed on complicity. We agree.
 {¶ 2} Peterson was charged with breaking into a garage. The evidence shows that he was present at the time of the break-in, but it is silent regarding whether Peterson or the man present with him actually broke into the garage. The State, for some reason, did not seek a jury instruction on complicity and, the trial court did not give such an instruction, even though the evidence strongly shows that Peterson was complicit in this offense. Because it is impossible to tell from the evidence whether Peterson actually broke into the garage, his conviction is not supported by sufficient evidence. Accordingly, the judgment of the trial court is reversed and Appellant's conviction is vacated.
 Facts {¶ 3} On the morning of November 7, 2005, Patrick Chestnut drove up to a house he was building for himself in Columbiana County, Ohio. Chestnut had first built the garage in order to secure the supplies and equipment he would use to construct the rest of the home and had not yet completed construction on the rest of the home. Chestnut kept a locked cable at the entrance to the house's driveway for security, but the cable was slack enough to let a car drive under it if someone held the cable up off the ground.
 {¶ 4} When Chestnut reached the home that morning, he unlocked the cable and drove part-way up the driveway. He then noticed a strange car parked in front of his garage. Chestnut approached the men in the car, asked why they were there, and then noticed some of his equipment in the back seat. At this point, the vehicle drove away at high speed, causing a piece of molding to fall off the car. Chestnut chased the car until it stopped in the middle of the road. The driver put some of Chestnut's equipment in the road and drove off. Chestnut stopped the chase to retrieve the equipment from the road. He later discovered that the men had not given him all of his equipment and told police the car's description and license plate number. *Page 2 
 {¶ 5} That evening, police spotted the vehicle at a residence and eventually arrested three men in that residence, one of whom was Peterson. Chestnut identified Peterson as being the passenger in the car and Peterson was charged with breaking and entering. The case proceeded to a jury trial on August 8, 2006. At the conclusion of that trial, the trial court instructed the jury on the offense of breaking and entering, but did not instruct the jury on complicity. The jury found Peterson guilty as charged and he was later sentenced to twelve months in prison.
 Sufficiency and Manifest Weight of the Evidence {¶ 6} In this appeal, Peterson argues the following three assignments of error, all of which address common issues of fact and law:
 {¶ 7} "The judgment of conviction is contrary to law and to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in that there was insufficient evidence adduced to establish each and every element of the offense beyond a reasonable doubt."
 {¶ 8} "The judgment of conviction is contrary to the manifest weight of the evidence."
 {¶ 9} "The judgment of conviction is based upon an impermissible stacking of an inference upon an inference."
 {¶ 10} In these assignments of error, Peterson challenges both the weight and sufficiency of the evidence against him. As the Ohio Supreme Court has stated, arguments concerning the "sufficiency of the evidence" should not be confused with those addressing the "manifest weight of the evidence." See State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-0052, at paragraph two of the syllabus ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.") "Sufficiency of the evidence" is "`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed.1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the *Page 3 
evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law. Thompkins at 386.
 {¶ 11} In contrast, when reviewing whether a conviction was against the manifest weight of the evidence, this court must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v.Tibbetts, 92 Ohio St.3d 146, 163, 2001-Ohio-0132, quoting State v.Getsy (1998), 84 Ohio St.3d 180, 193, 1998-Ohio-0533. In order to do this, this court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis sic.)Thompkins at 387, quoting Black's Law Dictionary (6 Ed.1990) 1594.
 {¶ 12} In this case, Peterson was convicted of breaking and entering in violation of R.C. 2911.13(A), which provides:
 {¶ 13} "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."
 {¶ 14} "`Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(A)(1). A theft offense under R.C. 2913.01(K) includes theft, which is defined, among other things, as knowingly obtaining or exerting control over the property without the consent of the owner. R.C.2913.02(A)(1).
 {¶ 15} The evidence in this case does not support Peterson's conviction for breaking and entering as a principal offender. Chestnut testified that he was building a *Page 4 
new residence in Columbiana County. He built the garage prior to building the rest of the home in order to store the tools and supplies he was using to complete the construction. Chestnut kept the garage locked in order to safeguard his property. However, Chestnut said that someone could force their way into the garage.
 {¶ 16} On November 7, 2005, Chestnut drove to the construction site in the morning. He kept a locked cable across his driveway for security. However, the cable was slack enough for a car to drive under it if someone held the cable up while the car passed through. The cable was locked when Chestnut reached it and he unlocked it and drove in. He stopped in the driveway because he saw two men sitting in a car parked outside his garage. Chestnut never saw either of these men outside the vehicle at his property.
 {¶ 17} Chestnut approached the car and spoke with the driver, who was later identified as David Heddleston. He testified that the passenger, identified as Peterson, never spoke. Chestnut saw his generator in the back seat of the car and said he wanted it back; the car then "took off" and Chestnut chased it in his truck. As the car took off, a piece of molding fell off, which Chestnut later retrieved and gave to the police. Chestnut called his wife while chasing the car, gave her both a description of the car and its license plate number, and told her to call the police.
 {¶ 18} Chestnut chased the vehicle at high speed for four or five miles. The car was going through stop signs and red lights in an effort to escape. Eventually, the car came to a stop in the middle of the road. And Chestnut stopped about three hundred feet behind it. Peterson threw the Chestnut's chainsaw out on road and the driver got out of the car to put the generator on the road. Chestnut asked the driver if he had any other of his tools and the driver said, "No." The car then drove away and Chestnut retrieved his tools from the middle of the road. When Chestnut returned back to the worksite, he discovered that his cement saw was missing.
 {¶ 19} Deputy Stephen Boyd took the call about the break-in and spoke with Chestnut. He contacted local police departments and gave them the description of the vehicle. The East Palestine police department was familiar with the vehicle and knew *Page 5 
where it was usually housed. Officer Donald Johnson was advised to keep a lookout for the vehicle and saw it at a residence in East Palestine that evening. He contacted the sheriff's department and deputies arrived shortly after that. The officers then arrested three men in the residence. Shortly after midnight, Chestnut arrived at the East Palestine police department and identified Heddleston and Peterson as the offenders.
 {¶ 20} The third man arrested accompanied Deputy Boyd to his home, where Chestnut's cement saw was recovered. He told police that Peterson and Heddleston had placed these items at his house. Heddleston denied his involvement, but told police that Peterson and another man had stolen the equipment.
 {¶ 21} This evidence appears to support a conclusion that Peterson was complicit in the offense. A defendant is complicit in an offense if he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. State v. Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, syllabus. This may be proven by circumstantial evidence. Id.
 {¶ 22} In this case, it appears that Peterson, at the very least, had to assist Heddleston by raising the chain in front of Chestnut's driveway so the car could reach the garage. He also assisted in the get-away by putting the chainsaw in the road. These facts both establish that Peterson was complicit in the offense. Finally, his later disposal of the cement saw shows complicity in the offense.
 {¶ 23} However, appellate courts cannot consider evidence of a defendant's complicity in a criminal act if the jury was not instructed on complicity since this would violate the defendant's Sixth Amendment right to a jury trial. See State v. Staats (Jan. 30, 1995), 5th Dist. No. 1994 CA 00226. As the United States Supreme Court has made clear in a recent line of cases, courts cannot base a conviction or increase the penalty for a crime beyond the prescribed statutory maximum on any fact, other than the fact of a prior conviction, which has not been submitted to a jury and proved beyond a reasonable doubt. See United States v.Booker (2005), 543 U.S. 220; Blakely v. Washington (2004), 542 U.S. 296;Apprendi v. New Jersey (2000), 530 U.S. 466; State v. Foster,109 Ohio St.3d 1, 2006-Ohio-0856. Thus, we are limited to considering whether the evidence *Page 6 
supports Peterson's conviction as the principal offender.
 {¶ 24} In contrast to the strength with which the evidence points towards Peterson's guilt as complicit in the offense, the evidence supporting a conclusion that Peterson was actually the principal who broke into Chestnut's garage is weak. For example, Chestnut never saw Peterson outside the car while it was on his property and there is no forensic evidence showing that Peterson ever entered the garage. Under the facts in the record, it is equally likely that Peterson, Heddleston, or both of them together broke into the garage. If Peterson never entered the garage, then he could not be guilty of being the principal in this case.
 {¶ 25} The Ninth District was faced with a somewhat similar situation in State v. Brown (Oct. 7, 1998), 9th Dist. No. 18766. In that case, the defendant and an accomplice entered a home and robbed the homeowner. Both men were armed with handguns and, during the course of the crime, the homeowner was shot to death. The defendant was charged with and eventually convicted of aggravated murder. When reaching its verdict, the jury found that the defendant was the principal offender.
 {¶ 26} The appellate court held that there was insufficient evidence supporting the jury's finding that the defendant was the principal offender.
 {¶ 27} "Dr. Ruiz, who performed the autopsy on the body of Julius Ricky Norman, testified that Norman was shot four times and that three of the four shots went all the way through Norman's body, creating both entrance and exit wounds. In other words, Norman had seven wounds to the surface of his body. Dr. Ruiz testified that these wounds were in Norman's neck, chest, abdomen, hip, and leg on the anterior side of his body and there was a large irregular wound on the posterior side of his body, as well as a large hematoma where one of the bullets entered and then exited Norman's body. * * *
 {¶ 28} "Dr. Ruiz then testified that the cause of death for Julius Ricky Norman was hypovolemic shock due to the rupturing of the aorta, esophagus, and lungs, stating that: `[s]o with an injury like he had, he bled instantly. He didn't have a chance.' Most importantly, Dr. Ruiz testified that the shot that ruptured Norman's aorta entered Norman's body through his neck and exited through his back and was the only fatal shot. *Page 7 
 {¶ 29} "Tests performed by the Bureau of Criminal Investigation showed that the guns used in the robbery were operable, that only two of the bullets recovered from the Garfield Street residence were fired from Brown's gun, and that at least six of the bullets recovered were fired from Franks' gun. One `live round' was also ejected from one of the guns, but it could not be positively connected with either gun, although Nancy Bulger, a ballistics and firearms expert employed by the Ohio Attorney General's Office, testified that the live round `probably' came from [Brown's gun]. The number of bullets recovered was consistent with the number of bullets left in each of the guns. One bullet was recovered from Norman's leg and created only an entrance wound. This bullet came from Franks' gun. Two spent nine millimeter brass shell casings recovered from the Garf ield Street residence had been fired from Brown's gun. One `slug' recovered from the residence was too beat up to determine rifling characteristics. Neither of the bullets fired from Brown's gun were found in Norman's body nor was there evidence that these bullets travelled [sic] through the body.
 {¶ 30} "We find that there was insufficient evidence to find that Brown was a `principal offender' in this case. There was insufficient evidence that the fatal shot was fired from Brown's gun. After reviewing the entire record and the transcript of the testimony taken at trial, we conclude that a rational trier of fact could not have found Brown to be the principal offender in the murder of Julius Ricky Norman beyond a reasonable doubt." Id. at 4-5.
 {¶ 31} In Brown, it was impossible to tell, based on the evidence introduced at trial, whether the defendant or his accomplice committed the criminal act which formed the basis of his conviction as a principal. Accordingly, his conviction as a principal offender was not supported by sufficient evidence.
 {¶ 32} This case faces us with basically the same situation. It is impossible to tell, based on the evidence introduced at trial, whether Peterson, Heddleston, or both actually committed the criminal act forming the basis of his conviction as a principal. Accordingly, the evidence was insufficient to prove, beyond a reasonable doubt, that Peterson was the principal offender. *Page 8 
 {¶ 33} The State relies on a statement made by Heddleston to argue that there is evidence showing Peterson was the principal offender. During cross-examination by defense counsel, Deputy Boyd said that Heddleston told him that Peterson had committed the crime along with another subject. However, this statement does not prove that Peterson entered the garage in order to steal Chestnut's equipment any more than Peterson's presence in the car proved that fact.
 {¶ 34} Furthermore, the State argues that Peterson's later possession of the cement saw shows that he was the person who stole the saw. Some cases have held that the possession of items which have been stolen in a break-in indicates that possessor was the taker. See Methard v.State (1869), 19 Ohio St. 363; State v. Brennan (1949),85 Ohio App. 175; State v. Simon, 6th Dist. No. H-04-026, 2005-Ohio-3208. However, the facts of this case show that Peterson could have later possessed the cement saw, even if he had not been the person who actually broke into the garage.
 {¶ 35} In conclusion, there is not sufficient evidence in the record to conclude, beyond a reasonable doubt, that Peterson actually broke into Chestnut's garage, despite the evidence strongly showing that he was complicit in that offense. Accordingly, Peterson's assignments of error are meritorious. The judgment of the trial court convicting Peterson as the principal offender in this case is reversed and his conviction is vacated.
 Donofrio, J., Waite, J., concurs. *Page 1