The STATE of Ohio, Appellee,

v.

GLADDING, Appellant.

[Cite as *State v. Gladding* (1990), 66 Ohio App.3d 502.]

Court of Appeals of Ohio,
Lake County.

No. 88–L–13–200.

Decided March 5, 1990.

*Steven C. LaTourette,* Prosecuting Attorney, and *Karen Lutz Kowall,* Assistant Prosecuting Attorney, for appellee.

*Paul Mancino, Jr.,* for appellant.

CHRISTLEY, Presiding Judge.

On March 30, 1987, appellant Donn Paul Gladding, a juvenile, was charged with delinquency for the offenses of rape, kidnapping and theft. On May 9, 1988, the juvenile court relinquished jurisdiction and transferred the case to the Lake County Common Pleas Court, where appellant was tried as an adult. Appellant was charged with three counts: Count I, rape in violation of R.C. 2907.02; Count II, kidnapping in violation of R.C. 2905.01; and Count III, receiving stolen property in violation of R.C. 2913.51.

The case went to jury trial on October 3, 1988 and appellant was found guilty on all three counts. On October 12, 1988, the court entered judgment and appellant was sentenced to life imprisonment on Count I, an indeterminate term of six to twenty-five years on Count II, to be served consecutively to Count I, and a definite term of two years on Count III, to be served concurrently with Count I, in the Ohio State Reformatory, Mansfield, Ohio. On October 28, 1988, appellant timely filed a notice of appeal and assigns the following as error:

"1. The defendant was denied due process of law when the juvenile court would not order an independent evaluation of the defendant prior to binding over the defendant to be tried as an adult.

"2. The defendant was denied his constitutional rights when the court admitted into evidence statements made by the defendant after he had been arrested and made a request for counsel.

"3. The court committed prejudicial error and denied the defendant his constitutional rights when it overruled the motion to suppress based upon an improper warrantless arrest of the defendant in violation of the United States and Ohio Constitutions.

"4. The defendant was denied due process of law when the court refused to suppress the identification of a defendant made through suggestive pretrial identification procedures.

"5. The defendant was denied his constitutional rights of confrontation and cross-examination when the court permitted a police officer, detective Robert Jaksa, to testify as to an out-of-court identification made by Eric Prymas.

"6. The defendant was denied his right to present a defense when the court would not permit evidence of declarations against a penal interest made by Howard Gallagher to be offered in evidence.

"7. The court committed prejudicial error in denying the defendant due process of law when it permitted Barbara Caraballo to testify as to matters which did not constitute admissible evidence.

"8. The defendant was denied due process of law when it was not disclosed that the victim in this case, Jennifer Princic, had given a statement to an interviewing witness which contradicted her testimony at trial.

"9. The defendant was denied a fair trial when the court refused to grant a mistrial by reason of extraneous information coming before the trial jurors.

"10. The court committed prejudicial error in permitting not only the paying [*sic*] of the tape recording of the defendant, but also to have allowed the jury to have a transcript of that hearing.

"11. The court committed prejudicial error and denied the defendant his constitutional rights when it overruled a motion to dismiss the kidnapping count of the indictment for the reason that the kidnapping count of the indictment failed to charge an offense.

"12. The defendant was denied a fair trial and the assistance of counsel where the court would not allow defense counsel to argue inferences during the course of closing argument.

"13. The defendant was denied due process of law when the court instructed the jury that the defendant had to prove an alibi by a preponderance of the evidence.

"14. The court committed prejudicial error and denied the defendant due process of law when instructing the jury that before the jury could consider the lesser included offense of gross sexual imposition it had to find the defendant not guilty of the greater offense of rape.

"15. The court committed prejudicial error and denied the defendant a fair trial when he refused to give either in form or in substance the requested special instructions tendered by the defendant.

"16. The court committed prejudicial error in overruling the motions for judgment of acquittal as there was insufficient evidence to permit a rational factfinder to find that there was sexual conduct as proscribed by the rape statute.

"17. The defendant was subjected to a cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and the cognate provisions of the Ohio Constitution when he was sentenced to a term of life imprisonment for the offense of rape."

\* \* \*■

■ In his second assignment of error, appellant argues that he was denied his constitutional rights when the court failed to suppress written, recorded and oral statements, including incriminating statements, which he claims were illegally obtained after he had invoked his right to counsel. This assignment has no merit.

Appellant argues that since he had tried to contact counsel *during his arrest,* the police could not proceed further to administer *Miranda* warnings and take statements.

The record shows that during his arrest at his home, appellant's mother called an attorney. There is some dispute as to whether appellant himself tried to speak with that attorney during the arrest. In the suppression hearing, appellant testified that he said " \* \* \* I want to talk to my laywer, and [the police] said no, and hung the phone up on me." Regardless of whether that actually occurred, there is no evidence of interrogation during the arrest. Appellant was escorted to the police cruiser and given his *Miranda* warnings in the cruiser immediately after the arrest. There is no testimony to show that appellant subsequently asserted his right to counsel while in the cruiser.

Later at the police station, in the presence of his mother, appellant was once again given his *Miranda* warnings. At this time the following colloquy took place:

"[Appellant:] Yes. There's only one question I have. If I wanted a lawyer, would I have to wait a couple days, or have him come down now?

"[Officer:] If you get one to come down now, you are very free to call one and get one to come down. The court won't appoint you one until you go to court and at that point, I would say to you don't talk to us till you go to court, okay, and talk to an attorney.

"But, if you want to talk to us without an attorney, this is the chance to do it. And, it's your decision and you and your mother talk about it, you have already.

"[Appellant:] I'd like to see if I can get my lawyer to come down.

"[Appellant's Mother:] He said he couldn't come down tonight, but he said he could talk to you tomorrow.

"[Appellant:] Well, I'll just go ahead with it.

"[Officer:] Okay, this is what the two of you want, to go ahead and do this?

"[Appellant:] Yes."

Both the state and appellant (although appellant's argument is somewhat vague) address the issue of whether or not appellant's mother could invoke his right to counsel for him at the time of his arrest preceding his arrival at the police station. However, this issue is a red herring. Even if appellant's mother could invoke his right to counsel at that time, or even if appellant himself did try to contact an attorney during the arrest, it makes no difference, since the right to counsel does not attach at the moment of arrest.

In support of his position, appellant cites *Edwards v. Arizona* (1981), 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378, 386, wherein the court held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." However, the facts of *Edwards* show that the defendant invoked his right to counsel during *interrogation*. In this case, appellant is claiming that his right to counsel was effectively invoked during his *arrest*.

In *State v. DePew* (1988), 38 Ohio St.3d 275, 278, 528 N.E.2d 542, 548, the court held:

"Appellant next argues that his right to counsel attached at the moment of his arrest, and that any interrogation was improper after the arrest, since appellant claims to have requested a lawyer at that time. *Edwards v. Arizona* (1981), 451 U.S. 477 [101 S.Ct. 1880, 68 L.Ed.2d 378]. However, as noted above, the trial court found that no such request was communicated to the officers at the time of the arrest. Moreover, the right to counsel has consistently been viewed as attaching at trial, and at 'critical' stages of the proceedings before trial where ' "the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or both." ' *United States v. Gouveia* (1984), 467 U.S. 180, 189 [104 S.Ct. 2292, 2298, 81 L.Ed.2d 146, 155], citing *United States v. Ash* (1973), 413 U.S. 300, 310 [93 S.Ct. 2568, 2574, 37 L.Ed.2d 619, 627]. The time of appellant's arrest cannot possibly be described as a 'critical' stage involving any such confrontation. *All* the evidence at the suppression hearing, including appellant's own testimony, established that there was *no* interrogation of appellant either at the time of the arrest or in the car on the way to the prosecutor's office. Mere arrest and

transportation does not constitute a 'confrontation' similar to a trial. Appellant's confession was properly admitted into evidence." (Emphasis *sic.*)

Appellant tries to distinguish *DePew* on its facts. However, *DePew* is unequivocal as to when the right to counsel attaches and that the right to counsel does not attach at arrest.

Furthermore, a telephone call to an attorney is not necessarily tantamount to a request for present assistance of counsel. In *Gorel v. United States* (S.D.Tex.1981), 531 F.Supp. 368, a suspect's wife attempted to contact an attorney while her husband was being interrogated in their home by F.B.I. agents. The court found, from the totality of the circumstances of the case, that the calls on defendant's behalf were not *present* attempts by him to invoke the right to counsel. Rather it found, based on the defendant's testimony, that those efforts were to obtain a lawyer for future defense. While the court admitted that there was a presumption that an effort to reach an attorney is an invocation of the present right to counsel, the court stated that it would "not construe any mention of an attorney as an invocation of the right-to-counsel or as an equivocal request for counsel which forecloses interrogation." *Id.* at 371.

In this case, the surrounding circumstances show that appellant's requests to talk to an attorney were an attempt to obtain counsel for future defense rather than an invocation of a present right to counsel. Further, the tape transcript previously quoted shows that appellant talked himself into going forward without encouragement from the police.

In his third assignment of error, appellant argues that the court erred when it overruled his motion to suppress statements which followed an improper warrantless arrest. This assignment has no merit.

The lower court found that the warrantless arrest was valid because of exigent circumstances. In *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, at paragraph one of the syllabus, the court held that "[a] warrantless arrest in a suspect's home may be valid if necessitated by exigent circumstances or performed in 'good faith' compliance with standards of conduct which, at the time of the arrest, were permissible."

In this case, the record shows that the rape and kidnapping occurred on Friday morning, March 27, 1987. Appellant's identity did not become established until that evening when the courts were closed and the police were having difficulty locating anyone in authority. The police called appellant's home and were told that he was in Lorain or Elyria and that the family was going to be leaving either that night or early the next morning to go to Georgia. Appellant had fled the jurisdiction in the past when he had been

wanted on charges. Thus, it appears that there were sufficient exigent circumstances to validate this warrantless arrest pursuant to *Williams, supra.*

This court notes that there was an irregularity in appellant's arrest which needs to be addressed. The record shows that when the police arrested appellant in his home, they told him it was for burglary. It was not until appellant was in the cruiser that the police told him that the arrest was for rape and kidnapping. While there is evidence establishing probable cause for the arrest on kidnapping and rape, there is nothing in the record to establish that there was probable cause for an arrest for burglary. Appellant was never charged with burglary.

R.C. 2935.07 provides that "[w]hen an arrest is made without a warrant by an officer, he shall inform the person arrested of such officer's authority to make the arrest and the cause of the arrest." In *State v. Fairbanks* (1972), 32 Ohio St.2d 34, 61 O.O.2d 241, 289 N.E.2d 352, paragraph four of the syllabus, the court held:

"Where probable cause exists for an arrest by a police officer, the failure to notify the accused of the cause of his arrest does not render the arrest illegal if he is notified of the offense with which he is charged soon after he is taken into custody."

The facts in *Fairbanks* differ from those in the case at bar in that in *Fairbanks*, the defendant-appellant was carrying a concealed weapon and had run from the police officers. In this case, the police initially lied to appellant as to the real reason for his arrest. While there do not appear to be any Ohio cases directly on point, in *Gibson v. State* (Fla. 3rd DCA 1979), 368 So.2d 667, the court was faced with a similar situation:

"Gibson's subsequent arrest was in turn founded upon probable cause to believe that he had committed the felony of the possession of that heroin; it was therefore lawfully effected notwithstanding the fact that the officer formally stated that he was arresting Gibson for loitering and prowling, rather than possession, *Maddox v. State*, 236 So.2d 469 (Fla. 1st DCA 1970); *Hoskins v. State*, 208 So.2d 145 (Fla. 3rd DCA 1968). Hence, the court also rightly refused to suppress additional heroin and a quantity of cocaine which was discovered upon a search of the defendant's person after and incident to the thus-lawful arrest. *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973)." *Id.* at 668.

In this case, as soon as appellant was taken from his home and put into the police cruiser, he was told that the arrest was for rape and kidnapping. At the suppression hearing, the police testified that the reason they did not

immediately tell appellant the actual reason for the arrest was that appellant and various members of his family who were present during the arrest were so upset that it would have created "more confusion, more emotion at that time." From the arresting officer's testimony, it is apparent that the police felt that they were in a volatile and potentially dangerous situation, thus justifying the initial lie.

It does not appear that appellant was prejudiced in any way by this irregularity. No evidence ultimately used at trial was obtained during this interval. Before being given his *Miranda* warnings in the cruiser, appellant was told the true nature of his arrest. This was done soon after appellant was taken into custody in conformance with *Fairbanks, supra.* Thus, although this type of irregularity in police procedure is undesirable, its presence does not invalidate appellant's arrest.

Furthermore, "[e]ven if an arrest is illegal, it does not amount to a denial of due process and does not furnish, after conviction, grounds for relief * * *. This principle was established * * * in the case of *Brown v. Maxwell* (1962), 174 Ohio St. 29 [21 O.O.2d 285, 186 N.E.2d 612]." *Fairbanks, supra,* 32 Ohio St.2d at 41, 61 O.O.2d at 246, 289 N.E.2d at 357.

* * *

■ In his thirteenth assignment, appellant argues that the court erred when it instructed the jury that he had to prove an alibi by a preponderance of the evidence.

"Alibi is not an affirmative defense. Thus no burden of proof is placed upon one asserting alibi. Alibi is used to support the general plea of not guilty and simply applies to the claim that the defendant was elsewhere when the crime was committed. *State v. Payne* (1957), 104 Ohio App. 410 [5 O.O.2d 87, 149 N.E.2d 583]." *State v. Snider* (July 29, 1988), Portage App. No. 1838, unreported, 1988 WL 81309.

■ In this case, the court incorrectly instructed the jury that appellant had to prove his alibi by a preponderance of the evidence.

The state argues that appellant failed to make an effective objection to the instruction, thereby waiving any error unless this court wishes to address the error as "plain error." See *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804; and *State v. Craft* (1977), 52 Ohio App.2d 1, 7, 6 O.O.3d 1, 4, 367 N.E.2d 1221, 1227–1228. Crim.R. 30 provides that "[a] party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection."

█ A review of the transcript shows that appellant's counsel did not specifically use the words "I object." However, he did question the instruction and expressed his doubts about its accuracy, thus bringing the error to the trial court's attention at a time when the court could have given a corrective instruction. We find appellant's actions constitute an objection sufficient to bring the matter before this court for review.

In *State v. Walker* (1981), 2 Ohio App.3d 483, 2 OBR 610, 442 N.E.2d 1319, at the syllabus, the court held that "[a] jury instruction which requires the defendant to prove the defense of alibi beyond a reasonable doubt constitutes plain error to the prejudice of the defendant. * * *" However, the court in *Walker* distinguished the case before it from the case in *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, as follows:

" * * * In that case the Supreme Court of Ohio held that a jury instruction which requires the defendant to prove self-defense by a preponderance of the evidence does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. Although *State v. Long, supra,* and the case *sub judice* both concern instructions which incorrectly place the burden of proof upon the accused, the case can be distinguished. The instructions given in *State v. Long, supra,* required the defendant to prove self-defense by a preponderance of the evidence; the instructions given in the case *sub judice* required appellant to prove alibi beyond a reasonable doubt. Both instructions were incorrect, but in requiring that appellant prove his alibi beyond a reasonable doubt the court below placed a heavier burden upon him than was placed upon the defendant in *State v. Long, supra.* Thus, the court below committed a greater error. The erroneous instruction 'could not have done other than mislead the jury,' *State v. McRae* (Feb. 27, 1980), Hamilton App. No. C–790240, unreported, and could have led to a 'manifest miscarriage of justice.' * * *" *Walker,* at 484, 2 OBR at 611, 442 N.E.2d at 1320–1321.

In this case, unlike the court in *Walker,* we cannot conclude that the trial court's error in instruction served to mislead the jury. The evidence against appellant was overwhelming and included eyewitness identification and appellant's own incriminating statements. The testimony of the alibi witnesses that appellant was with them when the crime was committed was incredible and contradictory, both to each other's testimony and to that of appellant. Moreover, one of appellant's two alibi witnesses actually damaged appellant's case by admitting that on the morning of the crime, appellant told him "he was going to go and steal a Lockie Lee Dairy Truck." This corroborated the victim's testimony that appellant had put her in a Dairyman's truck. Further-

more, appellant's own statement to the police, which was before the jury, contradicted his alibi:

"Well, I got up at 6:30 and left my house about seven o'clock and I was walking around and when I ran away before, I took some acid with this one kid and every once in a while I take off by myself because I start * * * I freak out a little bit every once in a while. And, that's a problem I have which I kept to myself and I didn't say anything to my counselor or anything and I just walked by. * * * I asked her if she knew where her school was and I just grabbed her and took her to the truck."

Even though the trial judge's error was gross, we cannot say that it misled the jury, given the overwhelming evidence of appellant's guilt. In a case where the evidence is not so overwhelming, this court would have no other choice but to reverse. Fortunately, in this instance, we are convinced the outcome of the trial would not have been any different, even with a correct instruction on the issue of alibi. This error of the trial court *under these facts* did not result in a miscarriage of justice. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights should be disregarded."

We do not find our present analysis to be in conflict with our holding in *Snider, supra,* particularly since *Snider* was not a jury trial but a trial to court. There, the *Snider* trial court erroneously stated in its pronouncement of judgment that defendant failed to prove his alibi by a preponderance the evidence. In the instant case, we find no such element of reliance by the trier of fact.

Therefore, although this court finds that the trial court erred in its instruction, we nevertheless find that this error was harmless and nonprejudicial to appellant.

* * *

In his seventeenth assignment of error, appellant argues that his life sentence for rape constituted cruel and unusual punishment. This assignment is not well taken.

Appellant apparently was sentenced pursuant to R.C. 2907.02(B), which provides as follows:

"(B) Whoever violates this section is guilty of rape, an aggravated felony of the first degree. If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section *shall be imprisoned for life.*" (Emphasis added.)

R.C. 2907.02(A)(1)(b) prohibits sexual conduct when "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of such person."

 Generally, if a sentence falls within the terms of a valid statute, it cannot amount to cruel and unusual punishment. See *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 69, 30 O.O.2d 38, 39, 203 N.E.2d 334, 336. "[P]unishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." *Id.* at 69, 30 O.O.2d at 39, 203 N.E.2d at 336. See, also, *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph three of the syllabus, wherein the court held that "[a] punishment does not violate the constitutional prohibition against cruel and unusual punishments, if it be not so greatly disproportionate to the offense as to shock the sense of justice of the community."

 In this case, considering the heinousness of the crime of raping a nine-year-old child, it cannot be said that appellant's sentence was disproportionate or shocking to the moral sense of the community.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY, J., concurs.

FORD, J., dissents.

FORD, Judge, dissenting.

In this cause, the majority overrules appellant's thirteenth assignment of error with a myriad of legal arguments to support its conclusion that the court did not err by instructing the jury that appellant had to prove an alibi by a preponderance of the evidence.

This writer concurs with the majority's conclusion that "appellant's actions * * * constitute an objection sufficient to bring the matter before this court for review." However, I must dissent from the remainder of the majority's resolution of this assignment.

The majority relies upon *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, to support its conclusion on this assignment. While *Long, supra,* appears initially to be similar to the underlying cause as it does address jury instructions and burdens of proof, its rationale is functionally not kindred to this matter.

In *Long*, the appellant argued "that the trial court erred in instructing the jury that he bore the burden of proving the affirmative defense of self-defense by a preponderance of the evidence * * *." *Long*, at 93, 7 O.O.3d at 179, 372 N.E.2d at 805. The court, while finding error with the instruction, affirmed the conviction, indicating the misstatement did not rise to the crest of plain error.

Long's trial counsel had failed to object to the incorrect statement. This failure amounted to a waiver of any claimed error *but for* plain error or error which would have affected the outcome of the trial. *Id.* at 96–97, 7 O.O.3d at 180–181, 372 N.E.2d at 807–808. Justice Herbert, writing for the court, held in paragraph two of the syllabus: "A jury instruction violative of R.C. 2901.05(A) does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." The underlying tenet in *Long* is that the appellate court, absent a showing of plain error, will not find error unless the trial's outcome would have been different. *Long* expresses no opinion upon error which is brought to the attention of the trial court but is ignored, as is the scenario here. *Long* is also inapplicable to this cause since *Long* involved an instruction regarding the affirmative defense of self-defense, whereas the cause *sub judice* concerns an instruction applicable to alibi.

Even though I have questioned the extent to which *Long* should apply, I have nonetheless adhered to the superior court's holdings when appropriate. I do not feel it is applicable in this cause. Here, we concluded appellant in effect objected to the court's instructions. The trial judge chose to dismiss those objections and did not correct his misstatement. Now, to affirm such action by summarily applying the doctrine of "harmless error" would condone further improprieties as long as an appeals court can justify the results by noting that "the outcome of the trial would not have been any different." This type of legal analysis should not enjoy expanded endorsement. The logical progression endorsed here would have the harmless error doctrine applied to the outer reaches of the cosmos and cleanse not only all questions of evidential admissions, but all mispronouncements of law affecting an accused's fundamental rights embodied in the Constitution, with the result that prejudicial error might become not only an endangered species but, indeed, an extinct one.

Granted, with respect to "waived error," ineffective assistance of counsel or an evidential question, the harmless error doctrine may be appropriately applied. However, when an error is properly presented to the trial court by means of a timely objection or concerns a substantive legal issue that involves

an intrinsic due process question, it should not be summarily dismissed by a reviewing court under the guise of "harmless error."

I am mindful that a federal circuit court has concluded that an instruction on alibi which placed a burden on the defendant could be viewed as harmless error. *Fulton v. Warden, Maryland Penitentiary* (C.A.4, 1984), 744 F.2d 1026. Presently, the principle of harmless error as applied to shifting of the burden of proof from the state to the defendant with respect to alibi at the federal level is reminiscent of a Serbonian bog. Justice White, dissenting from the denial of a writ of certiorari in *Davis v. Kemp* (1985), 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 707, noted that the court has failed to resolve the question of whether a burden-shifting instruction can ever be deemed harmless error.

Next, the majority attempts to distinguish this cause from *State v. Walker* (1981), 2 Ohio App.3d 483, 2 OBR 610, 442 N.E.2d 1319, which is more on point than *Long*, but still not controlling. In *Walker, supra,* the appellant argued that the court erred "by incorrectly instructing the jury that the defendant/appellant had the burden" of proving alibi beyond a reasonable doubt. *Walker,* at 484, 2 OBR at 610, 442 N.E.2d at 1320. As in *Long,* Walker's counsel had failed to object to the erroneous instruction. The court held that "requir[ing] the defendant to prove the defense of alibi beyond a reasonable doubt constitutes plain error * * *." *Walker, supra,* at syllabus. The *Walker* court, in reaching a result opposite to that obtained in *Long,* noted that "the court below placed a heavier burden upon [the accused] than was placed upon the defendant in *State v. Long, supra.* Thus, the court below committed a greater error. The erroneous instruction 'could not have done other than mislead the jury,' * * * and could have led to a 'manifest miscarriage of justice.' " (Citations omitted.) *Id.* at 484–485, 2 OBR at 611, 442 N.E.2d at 1321. The *Walker* court felt that the higher standard of proof imposed by the trial court amounted to "greater error" which could only mislead the jury and, therefore, the instruction constituted plain error. *Id.* at 485, 2 OBR at 611, 442 N.E.2d at 1321.

The majority apparently concurs with this "sliding scale" measurement of degree of error. It, in essence, rejects *Walker* and relies upon *Long* because the burden of proof imposed by the trial court here was one of "preponderance" as in *Long* and, therefore, not great enough to reach the level of plain error when the standard is "beyond a reasonable doubt" as in *Walker.* The majority grasps this distinction, maintaining that the erroneous instruction in this cause could not have "served to mislead the jury."

This author does not share the same view, but rather is of the opinion that such examination is incorrect. The inquiry should not be focused upon the

degree of proof but rather upon who bears the burden of that proof. Any instruction which imposes a nonexistent burden upon the accused carries with it a vast potential for inherent harm and prejudice to the defendant, along with a high probability of confused analysis by the jury. Quite simply, such an instruction informs the jury that the burden is upon the defendant rather than the state on the issue of presence and on the question of identity.

It is axiomatic that alibi is not considered a defense in the traditional sense, let alone an affirmative defense. *State v. Norman* (1921), 103 Ohio St. 541, 134 N.E. 474, and *State v. Sabo* (1928), 119 Ohio St. 231, 245–246, 163 N.E. 28, 32–33. Rather, it is a refutation of the state's burden to show, beyond a reasonable doubt, that the accused committed the offense. Simply, it is a plea in avoidance offered to create doubt on the elements of identity and presence of the defendant. Such a strategy does not require the defendant to obtain any level of proof to create doubt as to one of the essential elements of the crime; it only requires him to present evidence which creates doubt. To the contrary, the position endorsed by the majority requires the accused to forgo one of his constitutionally protected rights and tacitly requires him to prove his alibi by the preponderance of the evidence.

In *Stump v. Bennett* (C.A.8, 1968), 398 F.2d 111, the Eighth Circuit Court of Appeals concluded that requiring the accused to prove alibi by the preponderance of the evidence violated due process. The court explained:

" * * * [the accused] must choose between the exercise of two constitutionally guaranteed rights. He must surrender either the right to offer corroborative evidence of his innocence or else his traditional right to have the state assume the burden of proving his guilt beyond a reasonable doubt. * * * Such a procedure can have no other purpose that to 'chill the assertion of Constitutional Rights by penalizing those who choose to exercise them * * *.' This is an impermissible burden." *Id.* at 120.

The magnitude of the shift in the burdens of proof was noted in *Smith v. Smith* (C.A.5, 1971), 454 F.2d 572:

" * * * There is yet no doubt that a shift in the burden of proof of an essential element of the crime does rise to constitutional proportions and renders the trial fundamentally unfair. The presumption of innocence and the harsh burden of proof placed on the State in criminal prosecutions are two of the oldest and most fundamental rights protected by our Constitution. They purport to protect all citizens from the threat of punishment by mistake. They are therefore far too important and fundamental to be classified as less than constitutionally protected." (Citations omitted.) *Id.* at 579.

Also, in *Trimble v. Stynchcombe* (C.A.5, 1973), 481 F.2d 1175, the Fifth Circuit Court of Appeals found that the harmless error doctrine was inapplica-

ble where the trial judge placed the burden of proving alibi upon the accused. The same issue was addressed by the Supreme Court in *Mullaney v. Wilbur* (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508, which held that shifting the burden of proof from the state to the defendant was a violation of the Due Process Clause.

Ohio courts, even prior to *Mullaney, supra,* have reached the same conclusion that the defendant bears no burden of proof on the issue of alibi. See *Norman* and *Sabo, supra,* and *Walters v. State* (1883), 39 Ohio St. 215. More, specifically, in *State v. Brown* (1956), 102 Ohio App. 113, 2 O.O.2d 113, 141 N.E.2d 686, the court in paragraph three of the syllabus held:

"In a criminal action, the defendant *does not* have the burden of proof to establish his alibi by a preponderance of the evidence, or beyond a reasonable doubt, and if proof of the alibi raises a reasonable doubt in the minds of the jury as to his guilt, such defendant should be acquitted." (Emphasis added.)

Clearly, with respect to alibi, courts have rejected the concept that the accused must prove his alibi.

The majority fires a second volley at this assignment by attempting to distinguish this cause from *State v. Snider* (July 29, 1988), Portage App. No. 1838, unreported, 1988 WL 81309. In *Snider, supra,* a visiting panel, sitting for this court, found error where the trial judge required the defendant to prove alibi by the preponderance of the evidence. The court, even though noting "that ample credible evidence exist[ed] to support a finding of guilt," found error. The court explained that the evidence of alibi may not have been considered [because appellant's] "failure to meet this standard of proof would require the court to fail to give any weight to the alibi evidence introduced at trial." *Snider,* at 3. (This holding specifically discounted the harmless error doctrine which the majority adopts.)

In other words, the jury may elect to discount alibi evidence because the defendant failed to prove it by a preponderance of the evidence, rather than acquit him because the state did not prove presence and identity, essential elements of the crime, beyond a reasonable doubt.

The majority discounts *Snider* "particularly since *Snider* was not a jury trial but a trial to court." Again, I fail to understand the functional distinction which this legal reasoning attempts to make. While this court, most recently in *State v. Hill* (Nov. 27, 1989), Trumbull App. Nos. 3720 and 3745, unreported, at 38, 1989 WL 142761, failed to find error on certain issues tried before the bench rather than to the jury, I am unaware of any decision which has endorsed the majority's proposition, which would find error in a case tried to a judicial tribunal, but not in one tried to a jury. An alibi, or plea in avoidance, does not take on different "leopard spots" in a bench trial than it

possesses in a jury trial. Would the majority have found error had this been a bench trial rather than a jury trial? Such reasoning is *non sequitur*.

In conclusion, the trial court's instruction was prejudicial error. The appellant properly objected, and the court failed to correct this misstatement of law. To reaffirm this mistake because of the doctrine of "harmless error" is to compound the injustice. Consequently, this is not harmless error. Rather, this is simply error, error *per se*. The decision of the trial court should be reversed for a new trial so that the proper instruction can be given.