OPINION
{¶ 1} Defendant-appellant Michael McConnell appeals from his conviction and sentence for Rape, following a jury trial. McConnell contends that the trial court erred in permitting his minor daughter, D.M., the alleged victim, to testify from chambers, outside of the physical presence of the jury and McConnell, because the requirements of R.C. 2945.481(E) were not met. Although we find that the requirements of R.C. 2945.481(E) were not satisfied, we conclude that McConnell has failed to demonstrate that but for the error, the outcome of the trial would have been otherwise, and therefore, has failed to demonstrate plain error.
 {¶ 2} McConnell contends that his conviction for Rape is against the manifest weight of the evidence. Specifically, McConnell contends that the State failed to prove penile-anal penetration, and therefore failed to prove that he committed the crime of Rape. Based on D.M.'s testimony on direct examination, in conjunction with the testimony of Dr. Todd Kelley, a pediatrician who examined D.M. at Children's Medical Center, and Dr. Ralph Hicks, a pediatrician specializing in child abuse who also examined D.M. at Children's Medical Center, we conclude that the jury did not lose its way and create a manifest miscarriage of justice in determining that McConnell penetrated D.M.'s anus with his penis, thereby committing the crime of Rape.
 {¶ 3} We conclude that McConnell's conviction for Rape is not against the manifest weight of the evidence.
 {¶ 4} McConnell contends that he was denied the effective assistance of counsel, because he was prejudiced by defense counsel's deficient performance during closing arguments. In view of the substantial evidence of McConnell's guilt, we cannot say that there exists a reasonable probability that McConnell would have been acquitted had defense counsel not made the closing argument he made. Therefore, we conclude that ineffective assistance of counsel has not been demonstrated.
 {¶ 5} McConnell contends that R.C. 2907.02 is unconstitutional under both the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution, because the sentence of life imprisonment is cruel and unusual punishment. We conclude that the life sentence imposed upon McConnell for raping his eight year old daughter, in violation of R.C. 2907.02(A)(1)(b), does not constitute cruel and unusual punishment, because the life sentence is not disproportionate or shocking to the moral sense of the community, due to the heinousness of the crime. McConnell contends that he was denied a fair trial due to prosecutorial misconduct, based on comments made by the State during closing arguments. McConnell argues that the prosecutor's comments were improper, because they injected the prosecutor's personal beliefs and implied defense counsel's insincerity, suggesting that defense counsel believed McConnell was guilty. We conclude that McConnell was not denied a fair trial, because the prosecutor's statements do not rise to the level of prosecutorial misconduct. A reversal in this case is not warranted.
 {¶ 6} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 7} On January 3, 2003, Clare and Michael McConnell had a party at their home to watch a football game. During the party, Clare and Michael both consumed alcohol. Michael consumed approximately ten beers and five to six shots of whiskey. Clare and Michael's minor children, D.M. and R.M., were at home that night. D.M. went to bed in Clare and Michael's waterbed in their bedroom, and R.M. fell asleep on the living room couch. A couple of hours later, Michael went to bed next to D.M. in the waterbed. After seeing D.M. and Michael asleep in the waterbed, Clare went to bed in D.M.'s room.
 {¶ 8} D.M., eight years old at the time, allegedly woke up to her father pulling her underpants down to her knees and penetrating her anus with his penis. After the alleged sexual assault, D.M. crawled out of the waterbed and went to her bedroom. When D.M. saw her mother sleeping in her bed, she crawled to the living room where she watched cartoons and ate cereal. Later that day, Michael dropped Clare and D.M. off to go ice skating and took R.M. to a basketball game. After they were done ice skating, D.M. told her mother about the sexual assault. When Clare and D.M. returned home, Clare confronted Michael about D.M.'s allegation of the sexual assault. Michael denied the allegation. Michael then privately spoke to D.M. and allegedly apologized for the incident claiming that if he did it, he thought D.M. was Clare.
 {¶ 9} D.M. was then taken to Children's Medical Center and examined by Dr. Todd Kelley. Dr. Kelley completed a history and conducted a physical examination on D.M. During the physical exam, Dr. Kelley discovered an anal fissure, approximately one-half centimeter in size. Dr. Kelley found the anal fissure to be consistent with penile-anal penetration. Clare removed D.M. from the hospital before D.M. was discharged, and against medical advice. Clare was later arrested at her home for obstruction of justice and endangering a child.
 {¶ 10} Michael McConnell was subsequently indicted for Rape, of a victim under the age of ten years old, in violation of R.C.2907.02(A)(1)(b). The State filed a motion requesting that D.M.'s testimony be given via closed circuit television at McConnell's trial. After D.M. and Brenda Ott, D.M.'s child psychologist, testified, the trial court found that the requirements of R.C.2945.481(E) were met, because "the inability of [D.M.], the child victim, to communicate about this alleged violation will result because of her extreme fear and that there is substantial likelihood that she will suffer serious emotional trauma from testifying in the presence of the defendant." The trial court ordered that D.M. be permitted to testify via closed circuit television from chambers, pursuant to R.C. 2945.481(E). This case then proceeded to a jury trial. McConnell was found guilty of Rape, and the mandatory life sentence was imposed. From his conviction and sentence, McConnell appeals.
 II {¶ 11} McConnell's first assignment of error is as follows:
 {¶ 12} "The trial court erred in permitting the complainant to testify outside of the presence of the jury and appellant[.]"
 {¶ 13} McConnell contends that the trial court erred in permitting D.M. to testify from chambers, outside the presence of the jury and McConnell, because the requirements of R.C.2945.481(E) were not met.
 {¶ 14} R.C. 2945.481(E) provides that "a judge may order the testimony of a child victim to be taken outside the room in which the proceeding is being conducted if the judge determines that the child victim is unavailable to testify in the room in the physical presence of the defendant due to one or more of the following:
 {¶ 15} "(1) The persistent refusal of the child victim to testify despite judicial requests to do so;
 {¶ 16} "(2) The inability of the child victim to communicate about the alleged violation or offense because of extreme fear, failure of memory, or another similar reason;
 {¶ 17} "(3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying."
 {¶ 18} When questioned by the trial court, D.M. testified as follows:
 {¶ 19} "THE COURT: * * * It's my understanding that you talked with Julie, the prosecutor, or Carla, your victim advocate, that you'd rather not be in the courtroom; is that right?
 {¶ 20} "MISS McCONNELL: (Inaudible reply)
 {¶ 21} "THE COURT: Okay. Why do you — just tell me a little bit about why you feel that way.
 {¶ 22} "MISS McCONNELL: Because I'm scared.
 {¶ 23} "THE COURT: Okay. Why are you scared, honey? Honey, it's okay. It's real important you just tell me why and then we'll talk, okay?
 {¶ 24} "MISS McCONNELL: Seeing my dad.
 {¶ 25} "THE COURT: Why do you think it would be hard seeing your dad?
 {¶ 26} "MISS McCONNELL: Because I haven't seen him in a long time.
 {¶ 27} "THE COURT: Okay. How does that make you feel?
 {¶ 28} "MISS McCONNELL: Sad.
 {¶ 29} "THE COURT: What are you afraid of because you haven't seen him in a long time? I mean, you're not quite sure what it is? And I noticed that when your dad came in the other room and it came up on the monitor by mistake, you started to cry. Do you have any concern about that might be the same way you'll feel in the courtroom?
 {¶ 30} "MISS McCONNELL: (Inaudible reply)
 {¶ 31} "THE COURT: Okay. You think it would be easier for you to be back here?
 {¶ 32} "MISS McCONNELL: Yes."
 {¶ 33} D.M.'s child psychologist, Brenda Ott, also testified as follows:
 {¶ 34} "Q. I'd like to pose to you the question, based on your work with [D.M.], do you have any concerns about her ability to testify in this courtroom today?
 {¶ 35} "A. Yes, I do.
 {¶ 36} "Q. And could you please share those with the Court?
 {¶ 37} "A. [D.M.] loves her father. She misses him very much. And the first time that she sees him after five months is going to be an emotional experience for her and I think she'll be overcome with emotion.
 {¶ 38} "Q. Based on your work with her, do you think she can testify about the subject matter?
 {¶ 39} "A. Yes.
 {¶ 40} "Q. Is your concern related to her testifying about the subject matter or is your concern related to her testifying about the subject matter in front of her father?
 {¶ 41} "A. In front of her father.
 {¶ 42} "Q. And do you think that [D.M.] will effect — based on your work with her, do you have any opinion as to whether she'll effectively be able to testify in her father's presence?
 {¶ 43} "A. I believe it will be extremely difficult for her to do that.
 {¶ 44} "Q. And do you think if she were to testify in her father's presence that there would be any emotional trauma that would result from that for [D.M.]?
 {¶ 45} "A. Yes."
 {¶ 46} Based on the testimony of D.M. and Ott, the trial court found that the requirements of R.C. 2945.481(E) were met, because "the inability of [D.M.], the child victim, to communicate about this alleged violation will result because of her extreme fear and that there is substantial likelihood that she will suffer serious emotional trauma from testifying in the presence of the defendant."
 {¶ 47} We conclude that D.M. and Ott's testimony was insufficient for the trial court to have found D.M. to have been unable to communicate about the alleged violation because of extreme fear or that there would be a substantial likelihood that she would suffer serious emotional trauma from testifying in the presence of McConnell. D.M.'s testimony that she was scared to see her dad because she hadn't seen him in a long time, which made her feel sad, does not amount to extreme fear or the substantial likelihood that she would suffer serious emotional trauma from testifying in McConnell's presence. Although D.M. testified that it would be easier for her to testify from chambers, outside of her father's presence, this is not the applicable standard and does not meet the requirements of R.C.2945.481(E). Ott's testimony that it would be difficult for D.M. to testify in her father's presence and that it would be an "emotional experience" for D.M. when seeing her father for the first time in five months, overcoming the child with emotion, also does not amount to extreme fear or the substantial likelihood that she would suffer serious emotional trauma from testifying in McConnell's presence. Although Ott agreed that D.M. would suffer emotional trauma if required to testify in her father's presence, there is no evidence that D.M. would sufferserious emotional trauma. We conclude that D.M. and Ott's testimony is insufficient to support the trial court's finding that the requirements of R.C. 2945.481(E) were met.
 {¶ 48} However, defense counsel failed to object to D.M. testifying from chambers, outside of the presence of the jury and McConnell. Defense counsel's failure to object waives all but plain error. State v. Ballew, 76 Ohio St.3d 244, 251,1996-Ohio-81, 667 N.E.2d 369. Counsel's failure to object "`constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise.'" Id., citations omitted. We conclude that McConnell has failed to demonstrate that but for the error, the outcome of the trial would have been otherwise, and therefore, has failed to demonstrate plain error.
 {¶ 49} McConnell's first assignment of error is overruled.
 III {¶ 50} McConnell's second assignment of error is as follows:
 {¶ 51} "The verdict of the jury was against the manifest weight of the evidence[.]"
 {¶ 52} McConnell contends that his conviction for Rape is against the manifest weight of the evidence. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citation omitted. A conviction should be reversed and a new trial ordered "only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 53} McConnell was convicted of Rape, in violation of R.C.2907.02(A)(1)(b), which states that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 54} "Sexual conduct" is defined, in pertinent part, as "anal intercourse * * * between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the * * * anal cavity of another. Penetration, however slight, is sufficient to complete * * * anal intercourse." R.C.2907.01(A).
 {¶ 55} The Supreme Court of Ohio has held that "there is sufficient evidence of anal intercourse, for purposes of the crime of anal rape under R.C. 2907.02, where the trier of fact finds that the defendant penetrated, however slightly, the victim's anus with any part of the defendant's body, or with any instrument, apparatus, or other object. If the evidence shows that the defendant made contact only with the victim's buttocks, there is not sufficient evidence to prove the defendant guilty of the crime of anal rape. As a corollary, where the evidence shows that the defendant attempts to penetrate the victim's anus, and, for whatever reason, fails to do so and makes contact only with the buttocks, there is sufficient evidence to prove the defendant guilty of the crime of attempted anal rape." State v. Wells,91 Ohio St.3d 32, 35, 2001-Ohio-3, 740 N.E.2d 1097.
 {¶ 56} McConnell contends that the State failed to prove penile-anal penetration and therefore, failed to prove that he committed the crime of Rape.
 {¶ 57} D.M. testified that she went to sleep in her parent's bed, and that she woke up to her father "putting his front in my back." D.M. testified as follows:
 {¶ 58} "Q. Okay. And when you woke up, what was dad doing?
 {¶ 59} "A. He was putting his front in my back.
 {¶ 60} "* * *
 {¶ 61} "Q. When your dad was doing this to you, were your underpants on or off?
 {¶ 62} "A. They were on my knees.
 {¶ 63} "Q. The were — they were pulled down to your knees?
 {¶ 64} "A. Yes.
 {¶ 65} "Q. Who pulled them down to your knees, [D.M.]?
 {¶ 66} "A. My dad.
 {¶ 67} "Q. Okay. When you said that he was putting his front in your back, are you talking about your back where you go poop?
 {¶ 68} "A. Yes.
 {¶ 69} "Q. And when you say his front, is that what daddy uses to go to the bathroom with?
 {¶ 70} "A. Yes.
 {¶ 71} "* * *
 {¶ 72} "Q. Okay. I'm going to give you an example and see if this helps, okay? Can you pretend that my two fists — see that I'm making two fists right now —
 {¶ 73} "A. Yes.
 {¶ 74} "Q. — are your butt cheeks?
 {¶ 75} "A. Yes.
 {¶ 76} "Q. Okay. I want you to scoot a little bit closer to me and I want you to show me with your finger what dad's front was doing.
 {¶ 77} "Okay. And are you — [D.M.], are you pushing your finger in between my two fists?
 {¶ 78} "A. Yes.
 {¶ 79} "MS. KRAFT: Your Honor, may the record please reflect that the witness has stuck her finger in between my two fists indicating to her that her finger would be dad's front and my hands would be her back?
 {¶ 80} "THE COURT: The record will so reflect.
 {¶ 81} "* * *
 {¶ 82} "Q. When dad did this, can you tell me what it felt like?
 {¶ 83} "A. It hurt.
 {¶ 84} * *
 {¶ 85} "Q. * * * You said daddy's front went in your back?
 {¶ 86} "A. Yes.
 {¶ 87} "Q. Okay. Do you know absolutely how far in his front went?
 {¶ 88} "A. Just a little bit.
 {¶ 89} "Q. Okay. Did it go in enough to hurt?
 {¶ 90} "A. Yes."
 {¶ 91} Based on D.M.'s testimony, D.M. woke up to her father, McConnell, putting his front, or the thing he uses to go to the bathroom with, i.e. his penis, in D.M.'s back, or where she goes poop, i.e. her anus, just a little bit, but enough to hurt. D.M.'s testimony is corroborated with the testimony of Dr. Todd Kelley, a pediatrician who examined D.M. at Children's Medical Center on January 4, 2004, and Dr. Ralph Hicks, a pediatrician specializing in child abuse who examined D.M. at Children's Medical Center on January 22, 2004 during a follow-up examination.
 {¶ 92} Dr. Kelley testified that while taking a history of D.M., D.M. told him that her dad "`had put his thing in my butt.'" Dr. Kelley also testified that D.M. said "that when her father inserted — inserted his penis into her butt that it did hurt." Dr. Kelley testified that while conducting a physical examination on D.M, he discovered an anal fissure, approximately one-half centimeter in size. Dr. Kelley testified that he found the anal fissure to be consistent with penile-anal penetration.
 {¶ 93} Dr. Hicks testified that based upon D.M.'s medical history, her January 4th physical examination by Dr. Kelley, her January 22nd examination by him, as well as his education, training, and experience, that D.M.'s anal fissure, discovered during the January 4th exam, was consistent with D.M.'s disclosure of penile-anal penetration. Based on the record, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice in determining that McConnell penetrated D.M.'s anus with his penis, thereby committing the crime of Rape. We find that the weight of the evidence supports that McConnell committed Rape.
 {¶ 94} McConnell argues that there is evidence that D.M.'s anal fissure could have been the result of causes other than anal rape. Dr. Kelley did testify that an anal fissure on a child may be caused by an impalement from a fall, Crohn's disease, or constipation. However, Dr. Kelley also testified that D.M. had no history of an impalement, Crohn's disease, or constipation, and that D.M. did not give him any history that was consistent with her anal fissure, other than penile-anal penetration. Dr. Hicks also testified that D.M. had no history of an impalement, Crohn's disease, or constipation. Dr. Hicks testified that where there is alleged sexual conduct involving penile-anal penetration with a child, most of the time he would not "expect any physical evidence or findings indicative of injury." Dr. Kelley and Dr. Hicks both testified that D.M.'s anal fissure was consistent with D.M.'s disclosure of penile-anal penetration. McConnell also argues that D.M.'s testimony on cross-examination presents evidence that there was no penile-anal penetration. D.M.'s testimony on cross-examination was as follows:
 {¶ 95} "Q. I'm going to ask you something that's real important now. Remember when Ms. Kraft did this (indicating)?
 {¶ 96} "A. Yes.
 {¶ 97} "Q. And you showed what your daddy was doing? Was it actually between your cheeks — just between your cheeks or was it actually in?
 {¶ 98} "A. Just between.
 {¶ 99} "Q. The cheeks?
 {¶ 100} "A. Yes.
 {¶ 101} "Q. Was it actually in any hole or anything like that?
 {¶ 102} "A. No.
 {¶ 103} "Q. So I'm sure, Danielle. You know where you poop, right?
 {¶ 104} "A. Yes.
 {¶ 105} "Q. It was up higher than that, right? I don't want to confuse you now. Was it between — it was between your cheeks, right?
 {¶ 106} "A. Yes.
 {¶ 107} "Q. But did it go where you — if you don't understand, tell me you don't understand — where you poop or was it up higher than that or lower than that or — am I confusing you?
 {¶ 108} "A. Up higher."
 {¶ 109} McConnell argues that based on this testimony, the State failed to meet its burden of proof to show penile-anal penetration existed establishing the crime of Rape. We cannot conclude that the evidence weighs heavily against the conviction. We recognize that D.M.'s cross-examination testimony gives the appearance of being in conflict with her direct testimony on the issue of penetration of her anus. On re-direct, D.M. again testified that her father's "front" went just a little bit inside her "back," but that it went in far enough to hurt her. It was for the jury to sort out this seeming conflict, in the testimony of a young witness. Based on D.M.'s testimony on direct examination, in conjunction with the testimony of Dr. Kelley and Dr. Hicks, as reviewed above, we conclude that the jury did not lose its way and create a manifest miscarriage of justice in determining that McConnell penetrated D.M.'s anus with his penis committing the crime of Rape.
 {¶ 110} We conclude that McConnell's conviction for Rape is not against the manifest weight of the evidence.
 {¶ 111} McConnell's second assignment of error is overruled.
 IV {¶ 112} McConnell's third assignment of error is as follows:
 {¶ 113} "The appellant was denied the effective assistance of counsel[.]"
 {¶ 114} McConnell contends that he was denied the effective assistance of counsel, because he was prejudiced by defense counsel's deficient performance during closing arguments.
 {¶ 115} We evaluate claims of ineffective assistance of counsel under the two-part test provided in Strickland v.Washington (1984), 466 U.S. 668. "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different." State v. Stevens,
Montgomery App. No. 19572, 2003-Ohio-6249, at ¶ 33, citingStrickland, supra; State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373.
 {¶ 116} McConnell argues that defense counsel was ineffective in arguing that McConnell was a child molester, not a rapist, and in referring to D.M. as the "victim" during his closing argument.
 {¶ 117} The record shows that during his closing argument, defense counsel stated as follows:
 {¶ 118} "Now, if you believe what [D.M.] tells you, then she was molested. There's no doubt about that. If you believe that she — what she said that her daddy took her panties down and rubbed his penis between her butt cheeks, she was molested. No doubt about that. But she — what she testified to, she wasn't raped.
 {¶ 119} "I asked her — I asked her if your daddy stuck his thing in where you pooped or higher than that, and she said higher than that. And that's between her butt cheeks. And if you're an eight-year-old girl, you would think that would be anal sex. But that's not rape. It's molestation. And if that happened, it's a terrible thing.
 {¶ 120} "* * *
 {¶ 121} "* * * I'm not sitting here condoning what he did if he did what he did by sticking it between her butt cheeks. I'm not condoning that. I'm not saying that's normal behavior in any way, shape or form. That's what [D.M.] testified to. And that's molestation. And it's wrong. And it's morally wrong and all this other stuff, but it's not rape.
 {¶ 122} "* * *
 {¶ 123} "* * * That's what D.M. testified to. I put my hands there and asked her what happened. She put her finger between — signifying between her butt cheeks. When I asked her if it happened where you poop, she said no. It was higher. And that's what she testified to. And she's the victim in this case.
 {¶ 124} "And I can understand her, if that's what really happened, thinking that that was anal sex. Even an adult would know that it's not. It's child molestation. It's not rape.
 {¶ 125} "* * *
 {¶ 126} "What I can tell you is that the victim in this case testified to an incident where she was molested, not raped. Now, my client denies it ever happened. * * * He said nothing happened. I believe him. If you believe the little girl, and I can't give you a reason why she would lie. I'm not sitting here — or I'm not standing her [sic] trying to explain why she'd lie, but I'm telling you what she testified to. What she testified to was that she was molested and not raped. There's a big difference. Again, I'm not condoning that behavior.
 {¶ 127} "* * *
 {¶ 128} "* * * Mike said it didn't happen. [D.M.] said it did. What she said happened was molestation and not rape.
 {¶ 129} "That doesn't make my guy a saint or anything like that, but he's not a rapist. And when you were sworn in the jury panel, you said that you'd hold the prosecution to prove each and every element of the allegations. And the main allegation is that there has to be some kind of penile entry into her anal cavity, and that's not what was testified to.
 {¶ 130} "Like I said, what she testified to was she was molested. There's no doubt about that. And that's wrong, but that's not what he's charged with.
 {¶ 131} "* * *
 {¶ 132} "The little girl, if you believe her, well, she was molested, no doubt about it. But she wasn't raped. And that's what the charge was. It doesn't make my guy a great guy or a bad guy or anything, but that's what she testified to * * *.
 {¶ 133} "I know it's a terrible thing, but that's not what he's charged with. Like I said, you guys took an oath to require the prosecution to prove and each and every element beyond a reasonable doubt and they haven't done that. What they have proven is molestation. It's a terrible thing. They didn't prove that she was raped."
 {¶ 134} Defense counsel's trial tactic appears to have been to convince the jury not to convict McConnell of Rape, as charged, upon the ground that the State failed to meet its burden of proof, based on the testimony of their witness, D.M. Defense counsel attempted to convince the jury that the State did not meet its burden of proof of the crime charged — Rape — because if the jury believed D.M.'s testimony, D.M. was molested and not raped. Defense counsel did not argue that McConnell is a child molester, but only that if the jury believed D.M., counsel having said he believed the defendant, not D.M., she was molested, but not raped. Although counsel's having referred to D.M. as the "victim" is questionable, from the context it is clear that he meant that she was an alleged victim. Finally, even if defense counsel's closing argument were deemed to constitute deficient performance, we conclude that there has not been a sufficient showing of prejudice resulting from it, in view of the substantial evidence of McConnell's guilt presented at trial.
 {¶ 135} In view of the substantial evidence of McConnell's guilt, as shown above, we cannot say that there exists a reasonable probability that McConnell would have been acquitted, had defense counsel not made the closing argument he made.
 {¶ 136} McConnell's third assignment of error is overruled.
 V {¶ 137} McConnell's fourth assignment of error is as follows:
 {¶ 138} "The imposition of a life sentence on appellant violates his state and Federal Constitutional Rights[.]"
 {¶ 139} McConnell contends that R.C. 2907.02 is unconstitutional under the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution, because the sentence of life imprisonment is cruel and unusual punishment, beyond a reasonable doubt. R.C. 2907.02(B) provides that where an offender violates R.C. 2907.02(A)(1)(b), and the victim is under the age of ten, the offender is subject to life imprisonment. McConnell contends that the life sentence is disproportionate to the crime allegedly committed.
 {¶ 140} "It is generally accepted that punishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." McDouglev. Maxwell (1964), 1 Ohio St.2d 68, 69, 30 O.O.2d 38,203 N.E.2d 334. "As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." Id., citations omitted.
 {¶ 141} The Eleventh District Court of Appeals addressed this same argument in State v. Gladding (1990), 66 Ohio App.3d 502,585 N.E.2d 838. The court held that "considering the heinousness of the crime of raping a nine-year-old child, it cannot be said that appellant's sentence was disproportionate or shocking to the moral sense of the community." Id., at 513. We agree.
 {¶ 142} We conclude that the life sentence imposed upon McConnell for raping his eight-year old daughter, in violation of R.C. 2907.02(A)(1)(b), does not constitute cruel and unusual punishment, because the life sentence is not disproportionate or shocking to the moral sense of the community, in view of the heinous nature of the crime.
 {¶ 143} McConnell's fourth assignment of error is overruled.
 VI {¶ 144} McConnell's fifth assignment of error is as follows:
 {¶ 145} "The appellant was denied a fair trial due to prosecutorial misconduct[.]"
 {¶ 146} McConnell contends that he was denied a fair trial due to prosecutorial misconduct based on comments made by the State during closing arguments. McConnell points to the following statements made by the State on rebuttal:
 {¶ 147} "MS. KRAFT: Ladies and gentleman, to say that I'm utterly confused at this point would be an understatement because all we heard about in the beginning is that this never happened and now we heard, I think that his penis was between her butt cheeks, it just didn't penetrate.
 {¶ 148} "Again, what's our theory here? Yeah, his penis was between her butt cheeks right before it entered through the anal cavity. Did it fully penetrate? We never had testimony to that and we don't need to because that's not the law."
 {¶ 149} McConnell argues that these comments by the State were improper, because they injected the prosecutor's personal beliefs and implied defense counsel's insincerity suggesting he believed McConnell was guilty.
 {¶ 150} "The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. The prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury.
 {¶ 151} "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." State v. Smith (1984), 14 Ohio St.3d 13, 13-14, 14 OBR 317, 470 N.E.2d 883, internal citations omitted.
 {¶ 152} It is also improper for a prosecutor to impute insincerity to defense counsel, suggesting that defense counsel believes his or her client is guilty, because comments along these lines are irrelevant and prejudicial. State v. Keenan
(1993), 66 Ohio St.3d 402, 405-406, 613 N.E.2d 203. "The personal opinion of defense counsel of their client's guilt or innocence is no more relevant than the opinion of the prosecutor. Yet, if the jury believes that even the defendant's own advocates think him guilty, that belief will naturally carry great weight in their deliberations. The jury is also likely to resent defense counsel's perceived insincerity." Id., at 406.
 {¶ 153} The statements made by the State during closing argument do not inject the prosecutor's personal beliefs or imply defense counsel's insincerity suggesting he believed McConnell was guilty. Although the prosecutor's statement "now we heard, I think that his penis was between her butt cheeks, it just didn't penetrate" somewhat mischaracterizes defense counsel's argument — that there was never any penetration, and even if you believe D.M., there was only molestation — we cannot find that it rises to the level of prosecutorial misconduct. Defense counsel's closing argument consisted of arguing that McConnell did not penetrate D.M.'s anus with his penis, and therefore did not commit rape. The prosecutor's statement does not impute insincerity by suggesting that defense counsel believed McConnell was guilty of Rape, because the statement itself addresses the missing element of penile-anal penetration, as argued by defense counsel.
 {¶ 154} The prosecutor's second statement regarding full penetration is not improper. R.C. 2907.01(A) provides that "[p]enetration, however slight, is sufficient to complete * * * anal intercourse." It is unfortunate that the prosecutor's question is somewhat ambiguous in asking, "Did it fully penetrate?" It is not as clear as we would like whether the prosecutor was referring to penetration of the anus, or merely penetration of the victim's "butt cheeks." Still, the trial judge correctly instructed the jury on this element of the offense, and the prosecutor's remarks do not clearly misrepresent the law, since they are susceptible of a reasonable interpretation consistent with the law. There was no objection to this portion of the State's closing argument.
 {¶ 155} We conclude that McConnell was not denied a fair trial, because the prosecutor's statements did not rise to the level of prosecutorial misconduct. A reversal in this case is not warranted.
 {¶ 156} McConnell's fifth assignment of error is overruled.
 VII {¶ 157} All of McConnell's assignments of error having been overruled, the judgment of the trial court is affirmed.
Judgment affirmed.
Brogan and Wolff, JJ., concur.