[Cite as *State v. Suloff*, 2019-Ohio-4607.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2018 AP 10 0032 |
| TIMOTHY J. SULOFF | |
| Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:        Appeal from the Tuscarawas County
                                 Court of Common Pleas, Case No. 2016
                                 CR 04 0127


JUDGMENT:                        Affirmed

DATE OF JUDGMENT ENTRY:          November 6, 2019


APPEARANCES:


For Plaintiff-Appellee           For Defendant-Appellant

MICHAEL J. ERNEST                GEORGE URBAN
Assistant Prosecuting Attorney   116 Cleveland Avenue, NW – Ste. #808
Tuscarawas County                Canton, Ohio  44702
125 East High Avenue
New Philadelphia, Ohio  44663

*Hoffman, J.*

**{¶1}** Appellant Timothy Suloff appeals the judgment entered by the Tuscarawas County Common Pleas Court convicting him of four counts of burglary (R.C. 2911.12) and two counts of theft (R.C. 2913.02), and sentencing him to an aggregate term of incarceration of twelve years. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On January 6, 2016, Terry Miller arrived at his home in Stonecreek, Ohio, at about 4:00 p.m., and discovered the kitchen door had been pried open. The door had been installed in the last week or two, and had been cleaned by his wife Elizabeth shortly before the break-in. Terry Miller called the Sheriff's Office to report the suspected break-in, and called one of his neighbors. The neighbor reported a loud, tan-colored truck in the area around 3:45 p.m. When Elizabeth Miller returned home, she discovered her jewelry box with all of her jewelry was missing, as well as two wooden boxes and a container of coins. She estimated the value of the jewelry at $3,000.

**{¶3}** Deputy Troy Beckley of the Tuscarawas County Sheriff's Department reported to the scene. He photographed footprints in the snow on the stairs leading to the broken kitchen door, which he photographed. He noticed four fingerprints in the middle of the glass window on the broken door. The prints were lifted and sent to the Ohio Bureau of Criminal Investigation (BCI) for analysis. The fingerprints were determined to be left by Appellant.

**{¶4}** Lt. Jeff Moore of the Tuscarawas County Sheriff's Department questioned Appellant about the burglary at the Miller home. Appellant denied breaking into the home, and when shown photographs of the home claimed he had never seen the home. Lt. Moore presented Appellant with the fingerprint report, which Appellant studied. After

reading the report, Appellant nodded his head up and down. During further conversation about the burglary, Appellant indicated he was remorseful.

{¶5} Chris and Cindy Goehring left their home in Dover, Ohio, on April 1, 2016, to go camping. They returned home around 11:15 a.m. on April 2. When they opened their garage door, they realized the door leading from the garage to the kitchen was open. When they entered their home, they found broken glass, and it appeared someone broke the glass on the French doors at the back of the house, reached inside, and unlocked the dead bolt. The couple called 911.

{¶6} The Goehrings' closet doors and dresser drawers were open, and Cindy Goehring's jewelry box was missing. Along with jewelry items with personal value, a ruby ring which had a diamond missing, a charm bracelet, and two tennis bracelets were in the stolen box. Lt. Moore contacted Cindy Goehring later, and she was able to identify two pieces of jewelry taken with the jewelry box: the ruby ring with a diamond missing, and a chain from which she had previously removed a pendant.

{¶7} Between 3:30-4:00 p.m. on April 4, 2016, Neil Parrot returned home to his Strasburg residence after work to find glass on his garage floor. The window at the back door to the garage had been broken, and someone had broken the door leading into the house and left it open. Parrot found glass scattered throughout the kitchen, closet doors left open, and a jewelry armoire belonging to his wife, Elaine, had been ransacked in the bedroom. Jewelry, gift cards, and cash were missing from the armoire, and three iPads, including one belonging to Parrot's employer Tuslaw Schools, were missing. Some of his pants were also missing, along with a pillowcase from the bed.

{¶8}    While investigating at the Parrot residence, Deputy Lincoln Troyer noticed two sets of foot impressions in the mulch outside the window.  A path of footprints led from the Canton Water Department to the back side of the Parrot residence.   While there were several homeless people living in tents by the river near the house, the footprint trail did not lead directly from the tents.

{¶9}    In the morning of April 11, 2016, Cathy Sprang exited her bathroom at her home outside Strasburg to find a man standing in her living room.  She yelled, "Who the hell are you and what are you doing in my home?"  Tr. (II) 192.  The man ran out the back door.  She described the man as about 5'5" tall, skinny, with dark skin.  Tr. (II) 193. Because he was wearing a hoodie, she could only see part of his face.   She saw the man drive away in a white car.  Deputy Rick Morrison responded to Cathy's 911 call, and lifted footprints from a Fila tennis shoe from Sprang's kitchen floor.  Cathy Sprang was unable to identify Appellant later from a photo lineup or later in court.

{¶10}  Theresa Stith resides outside of Bolivar.  At 9:00 a.m. on April 11, 2016, she was sitting in her living room.  She saw a man, who she later identified as Appellant, approach her front door and look in the window with his hands cupped over his eyes. When he saw her, his eyes got big and he smiled and waved at her.  Stith opened her front inner door, leaving the storm door closed, and asked Appellant if she could help him. He stated he was looking for McDugal Battery and stopped for directions.  She asked why he would come to her home asking for directions, because her home sits on a hill about a quarter of a mile from the road, and is not visible from the road.  He replied he was lost, and did not know what to do.  Stith told Appellant the only battery place in Bolivar is Harris

Battery, and gave him directions. Stith identified Appellant in court as the man she encountered at her home on April 11.

{¶11} Stith was unable to obtain Appellant's license plate number, so she got in her truck to follow him. She did not see him at Harris Battery, but saw the white car Appellant traveled in driving down the road. She was able to get a license plate number, which she gave to police.

{¶12} After running the license plate provided by Stith, deputies discovered the car belonged to Appellant. A search warrant was executed for Appellant's home. Appellant was wearing Fila tennis shoes at the time police went to the home. During the search, police found the iPad belonging to Tuslaw Schools taken from the Parrot home. They also found jewelry in Appellant's home.

{¶13} Lt. Moore interviewed Appellant about the Goehring and Parrot burglaries, and he denied any knowledge or involvement in the burglaries.

{¶14} Appellant was indicted by the Tuscarawas County Grand Jury as follows:

Count 1 – burglary of the Miller residence

Count 2 – theft from the Miller residence

Count 3 - burglary

Count 4 - theft

Count 5 - theft

Count 6 - burglary of the Goehring residence

Count 7 – petty theft of the Goehring residence

Count 8 – burglary of the Parrot residence

Count 9 – theft at the Parrot residence

Count 10 – attempted burglary of the Stith residence

Count 11 – burglary of the Spring residence

{¶15} Counts one and two were severed from the remaining counts for jury trial. Following jury trial in November of 2017, Appellant was convicted of counts one and two. Sentencing was deferred pending resolution of the remaining counts.

{¶16} The State dismissed counts three through five without prejudice, and the case proceeded to jury trial on counts six through eleven. The jury found Appellant guilty of counts six, seven, eight, and eleven, but not guilty of counts nine and ten. The trial court sentenced Appellant to three years incarceration on each count of burglary, to be served consecutively to each other. The court ordered the sentences imposed on Counts one and six to be served consecutively to Appellant's unrelated felony terms of imprisonment imposed by Holmes County and Marion County, and ordered the sentences imposed on counts eight and eleven to be served concurrently with the terms imposed by Holmes and Marion Counties. The court imposed no sentence on the theft counts. The court ordered Appellant pay restitution in the amount of $16,025 to the Parrots and $500 in restitution to the Goehrings.

{¶17} It is from the September 12, 2018 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I.　APPELLANT'S CONVICTIONS WERE AGAINST THE SUFFICIENCY AND/OR MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED IN ITS ORDER OF RESTITUTION TO THE PARROTS.

I.

**{¶18}** In his first assignment of error, Appellant agues his convictions of burglary and theft were against the manifest weight and sufficiency of the evidence.  We disagree.

**{¶19}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶20}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶21}** Appellant was convicted of one count of burglary in violation of R.C. 2911.12(A)(1), and three counts of burglary in violation of R.C. 2911.12(A)(2):

(A) No person, by force, stealth, or deception, shall do any of the following:

(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

{¶22} Appellant was also convicted of two counts of theft in violation of R.C. 2913.02:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent[.]

{¶23} **Miller Residence:** Appellant first argues there is insufficient evidence to identify him as the person who broke into the Miller residence, as there is no evidence to corroborate the fingerprint evidence found at the scene. He argues none of the items

taken from the Miller residence were connected to him, and he made no admissions. He further argues the Millers provided no supporting evidence the value of the items taken was $3,000.00.

**{¶24}** The burglary and theft counts related to the Miller residence were tried on November 7 and 8, 2017. The State presented evidence Appellant's fingerprints were lifted from the door at which the home was entered. The door had been installed only a week or two prior to the break in, and Mrs. Miller had cleaned the door shortly before the burglary. Footprints in the snow led to the door where Appellant's fingerprints were found.

**{¶25}** In *State v. Miller,* 49 Ohio St. 2d 198, 361 N.E.2d 419, *sentence vacated on other grounds,* 438 U.S. 911, the Ohio Supreme Court recognized the use of fingerprints for identification purposes in criminal cases, stating, "fingerprints corresponding to those of the accused are sufficient proof of his identity to sustain his conviction, where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at the time of the commission of the crime." *Id.* at syllabus. *See also, State v. Jenkins,* 5th Dist. Stark No. 2014CA00180, 2015-Ohio-3360, ¶22 (palm print alone is enough to establish the element of identity where print was left behind counter, near footprints left by robber, and store had been cleaned the night before); *State v. Walker*, 5th Dist. Stark No. 2000CA00077, 2000 WL 1745146, *1 (November 20, 2000) (defendant's fingerprints on the broken window glass gaining illegal entry into residence sufficient to support burglary conviction); *State v. Boone*, 6th Dist. Lucas No. L-08-1409, 2010-Ohio-1481, ¶15 (trier of fact was justified in concluding the owner of the fingerprint on underside of window used to enter home was the culprit).

**{¶26}** We find the fingerprint evidence presented in this case was sufficient evidence, if believed by the jury, to prove Appellant's identity as the person who burglarized the Miller residence.  Further, while Appellant he did not make a direct admission of guilt, Lt. Jeff Moore testified when presented with the fingerprint report Appellant first studied the report, then nodded his head up and down.  During further conversation about the burglary, Appellant indicated he was remorseful.  From all of the evidence presented, we find the jury did not lose its way in finding Appellant was the person who committed the burglary and theft of the Miller residence.

**{¶27}** Appellant also argues the Millers did not present supporting evidence concerning the value of the items taken.

**{¶28}** Terrence Miller testified as to how he and his wife arrived at an estimated value for the jewelry taken from their home:

> She has a very good memory.  She drew different pictures and descriptions of her jewelry.  We worked with the jeweler that she bought it from as well as the insurance company.

**{¶29}** Tr. (1) 148.

**{¶30}** Elizabeth Miller testified in arriving at an estimated value of the jewelry, she had kept a lot of the receipts and added them up.  Tr. (1) 151.

**{¶31}** We find the testimony of the Millers was sufficient evidence, if believed by the jury, to support the estimated value of $3,000.  Further, we find the jury did not lose its way in believing the testimony of the Millers regarding the value of the jewelry taken.

{¶32} **Goehring Residence:** Appellant argues there is no evidence linking him to the Goehring burglary and theft. He argues while there is evidence several items of jewelry were recovered and identified by Mrs. Goehring, there is no evidence these items were recovered in the search of Appellant's home.

{¶33} The burglary and theft charges connected to the Goehring residence were tried during the trial held on April 17, 18, and 19, of 2018. Lt. Moore testified as follows regarding the items found in the search of Appellant's home:

> There was some other jewelry that we also located in the home. Those items were taken at that time and later provided to victims who was able to identify some of that jewelry.

{¶34} Tr. (2) 278.

{¶35} Cindy Goehring testified a few weeks after the break-in at their home, Lt. Moore contacted her and her husband to show them pictures of items recovered in the case. From the pictures, she identified a ring and a chain which had been taken from the home. The only other person testifying at the April, 2019 trial regarding missing jewelry was Neil Parrot, who testified the only item returned by police was a Movado watch belonging to his wife.

{¶36} Although Lt. Moore did not specifically state items missing from the Goehring home were recovered in the search of Appellant's home, from his testimony multiple items of jewelry were taken from Appellant's residence and provided to victims who identified some of the jewelry, coupled with Cindy Goehring's testimony Lt. Moore

showed her pictures of jewelry she could identify as taken from her home and Neil Parrot's testimony only a single item was recovered from the theft of their jewelry, the jury could infer the ring and chain identified by Cindy Gohring were recovered from the search of Appellant's home.  We find the judgment of convictions of burglary and theft of the Goehring residence are not against the manifest weight of the evidence, and are supported by sufficient evidence.

{¶37}  **Parrot Residence:**  Appellant argues police failed to investigate the people living by the river near the Parrot home, despite the documentation they found in the tents identifying the people living there.  He also argues although the iPad belonging to Tuslaw schools and the Movado watch taken from the Parrot residence were found in Appellant's home, his wife and another man also lived in the home.

{¶38}  Appellant was convicted of burglary of the Parrot home at the trial conducted in April of 2019.

{¶39}  Although there were homeless people living in tents near the Parrot home, there was evidence the footprints leading to the door through which the person entered the home did not lead directly to the tents.  Further, the iPad taken from Appellant's bedroom matched the serial number of the iPad missing from the Parrot home, and the Parrots identified a watch taken from the search of Appellant's home as one taken in the burglary.

{¶40}  "It has long been the law of this state that, where a burglary has been committed and property stolen as a part of the criminal act, the fact of the subsequent possession is some indication that the possessor was the taker, and therefore the doer

of the whole crime." *State v. Simon*, 6th Dist. Lucas No. H-04-026, 2005-Ohio-3208, ¶14, *citing State v. Brennan*, 85 Ohio App. 175, 88 N.E.2d 281 (1949).

{¶41} In the instant case, the Parrot home was burglarized on April 4, 2016. The search warrant of Appellant's home was executed on April 12, 2016. Property stolen from the Parrot home was recovered during the search of Appellant's home. Although there was testimony two other people were living at the residence, the jury could conclude Appellant was the person who broke into the Parrot home, and not his wife or Matthew Graves. We find the conviction of burglary was not against the manifest weight or sufficiency of the evidence.

{¶42} **Sprang Residence:** Appellant argues Cathy Sprang was unable to identify Appellant at trial or from a photo lineup as the person who entered her home, and therefore his conviction of burglary of the Sprang residence was against the manifest weight and sufficiency of the evidence.

{¶43} Sprang was unable to identify Appellant as the person who entered her home, but also testified the man was wearing a hoodie which partially hid his face. She gave a general description of the man, which matched Appellant. A Fila tennis shoe print was lifted from her kitchen floor, and Appellant was wearing Fila tennis shoes when police executed the search warrant on his home. Sprang further testified after Appellant ran away she went to retrieve her gun, and when she returned to the window she saw a white car leaving her driveway.

{¶44} Theresa Stith was able to identify Appellant as the man who came to her door on the same morning as the Sprang burglary. She followed the white car Appellant drove, and retrieved a license plate number from the vehicle which ultimately led the

police to Appellant.  Stith lived relatively close to Sprang, and the incidents occurred on the same morning.

**{¶45}** While Stith described Appellant as wearing a striped shirt and jeans and Sprang testified the man who entered her home was wearing a hoodie and pants, a hoodie is an easy item of clothing to put on or remove.  Based on the proximity of the incidents in time and place, and the fact both Sprang and Stith connected a white car to the man who came to their home, we find the jury could conclude Appellant was responsible for the Sprang burglary.  We find the conviction of burglary is not against the manifest weight or sufficiency of the evidence.

**{¶46}**  The first assignment of error is overruled.

II.

**{¶47}**  Appellant argues the court erred in ordering him to pay restitution to the Parrots in the amount of $16,025, which reflected their total economic loss after the application of insurance payments.  He argues he was acquitted of the charge of theft from the Parrots' home, and further the State did not present credible evidence as to the amount of the loss.

**{¶48}**  R.C. 2929.18(A)(1) governs restitution orders:

> (A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section or, in the circumstances specified in section

2929.32 of the Revised Code, may impose upon the offender a fine in accordance with that section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.

**{¶49}** We review restitution orders under an abuse of discretion standard. *See, e.g., State v. Sheets*, 5th Dist. Licking No. 17 CA 44, 2018-Ohio-996, ¶ 15; *State v. Cook*, 5th Dist. Fairfield No. 16–CA–28, 2017–Ohio–1503, ¶ 8; *State v. Andrews*, 5th Dist. Delaware No. 15 CAA 12 0099, 2016–Ohio–7389, ¶ 40. An order of restitution must be supported by competent and credible evidence from which the trial court can discern the amount of restitution to a reasonable degree of certainty. *State v. Spencer*, 5th Dist. Delaware No. 16 CAA 04 0019, 2017–Ohio–59, ¶ 44 (citations omitted). Furthermore, a trial court abuses its discretion if it orders restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. *Id.* (citations omitted).

**{¶50}** Appellant was convicted of burglary of the Parrot home, but acquitted of the grand theft charge connected to the items stolen from the Parrot home. At sentencing, Appellant argued regarding restitution as follows:

MR. PERLAKY: Yes, in even ordering it I think the Court must consider the ability to pay if I remember 2929.18 correctly, and maybe I am remembering it incorrectly. Mr. Suloff has little to no ability to pay. I don't believe we have any disagreement with the claims by any of the individuals. I would note the only thing that concerns me is that I think the jury on the grand theft count was concerned about the testimony from the Parrots in terms of how they calculated their loss. Again, I'm guessing. Of course I don't know but they were somewhat concerned about that so we'd ask the Court to take that into consideration as well.

**{¶51}** Sent. Tr. 42.

**{¶52}** Despite the fact Appellant was acquitted of the theft charge, we find the trial court did not err in including items taken from the home were economic loss caused by the burglary.  The evidence presented at trial demonstrated the items were taken from the home as a result of the burglary, which Appellant was convicted of committing.

**{¶53}** Further, we find the trial court's determination of $16,025 in restitution is supported by competent, credible evidence in the record.  The State submitted a restitution request on behalf of the Parrots in the amount of $16,025.  Appellant did not specifically dispute the Parrots' calculation of damages, but rather argued the jury might have rejected their calculation of damages, thus acquitting Appellant of theft.

**{¶54}**  R.C. 2929.18(A)(1), quoted above, allows the court to award restitution in an amount recommended by the victim.  At trial, the State presented evidence the value of the property taken from the Parrotts was around $20,000, and they received $4,000 from the insurance company.  Neil Parrot testified he had taken photographs of the jewelry taken from the home as part of a household inventory, and was further able to provide serial numbers for the iPads taken in the burglary. We decline to speculate on the reason the jury found Appellant not guilty of theft related to the Parrot burglary, and find the trial court's restitution award is supported by the evidence in the record.

**{¶55}**  The second assignment of error is overruled.

**{¶56}**  The judgment of the Tuscarawas County Common Pleas Court is affirmed.


By: Hoffman, J.

Gwin, P.J.  and

Delaney, J. concur